GOOTEE S. NEAL *vs.* BURTON W. PARKER.

*Specific Performance of Contract to Saw Lumber—Specific Performance Not to be Refused Merely Because of Existence of Remedy at Law —Code, Art. 16, sec. 199.*

A contract to saw boards of a certain length and thickness does not require the exercise of such special skill as to be for that reason beyond the power of the Court to require a party to perform specifically.

Code, Art. 16, sec. 199, provides that "no Court shall refuse to specifically enforce a contract on the mere ground that the party seeking its enforcement has an adequate remedy in damages unless the party resisting its specific performance shall show to the Court's satisfaction that he has property from which such damages may be made, or shall give bond with approved security in a penalty to be fixed by the Court to perform the contract or pay all such costs and damages as may, in any Court of competent jurisdiction, be adjudged against him for breach or non-performance of such contract. *Held*, that the object of this statute was to compel parties either to perform specifically contracts which theretofore equity could not compel them by decree to perform because of the existence of an adequate remedy by an action at law for damages, or else to give a bond which would be liable for the damages which might be recovered against them for the breach.

Defendant agreed to sell to plaintiff 200,000 feet of pine boards to be cut from a designated tract of land and sawed by defendant at his mill in certain lengths, and plaintiff agreed to pay a certain sum for the same upon delivery to him at defendant's millyard. The price of lumber advanced after the contract was made and defendant refused to carry it out. Plaintiff could have purchased the same kind of lumber elsewhere at an advanced price. Upon a bill by plaintiff asking for a specific performance, *held*, that the contract was precise and clearly established ; that to saw the boards in the manner stipulated does not require the exercise of any such particular skill as would make a decree for specific performance inapplicable ; that the only objection to the making of such decree is that the plaintiff could have purchased the same lumber in the open market and then recovered in an action at law against the defendant for breach of the contract the difference between the contract price and such market price, but that this defense is not available to the defendant because Code, Art. 16, sec. 199, provides that the Court shall not refuse specific performance of a contract on the mere ground that the party asking for it has an adequate remedy in damages unless the other party shall show that he has property from which such damages may be made or shall give bond to pay the dam-

ages that may be recovered against him ; and that since the defendant in this case has not elected to give bond so as to oust the jurisdiction of equity, a decree directing specific performance was properly made.

Appeal from the Circuit Court for Caroline County (PEARCE, C. J., MARTIN and BROWN, JJ.)

The cause was submitted to the Court on briefs by :

*Wm. H. Deweese*, for the appellant.

It is against the policy and practice of Courts of equity to specifically enforce contracts relating to personalty. The exceptions are founded principally upon the inadequacy of the remedy at law in the particular case, or the special and peculiar nature and value of the subject-matter of the contract. *Miller's Equity*, sections 664 and 665 and cases cited. *Pom. Specif. Perform.*, section 2.

Goods possessing an easily ascertainable market value, as cotton or wheat, or ordinary merchandise easily found in the market, can not be made the basis of equitable consideration. 22 *Amer. and Eng. Ency.* 991.

In *St. Regis Lumber Co.* v. *Sante Lumber Co.*, 67 N. Y. Supp. 149, 55 App. Div. 225, where a lumber company agreed to furnish a certain amount of pulp wood each year for ten years, and not to sell the same to other parties so as to prevent fulfillment of contract, one of the grounds for refusing to enforce specific performance was that the contract related to a marketable commodity.

Here the contract relates to a marketable commodity. The testimony is not very clear whether plaintiff could have duplicated his purchase in the county or not, except by buying in smaller lots at some little greater expense, but it is perfectly clear that he could have gone in the market in Baltimore at any time and bought as much as he wanted and the kind he wanted if he had a mind to pay the price.

Just how far Code, Art. 16, sec. 199, changes the principles and rules heretofore laid down as governing equity Courts in matters of specific performance and injunction, this Court has

not fully determined, but the opinion is hazarded that it was never the intention of the Legislature to bring within the purview of the extraordinary powers of equity all contracts relating to chattels.   Such a construction would completely subvert the policy and practice of equity Courts heretofore existing in these cases, and it would entail upon them the arduous duties of the settlement of controversies proper to be determined in another forum, and where the ends of justice could be as readily met.

Assuming the remedy at law to be adequate, if the defendant is solvent, this Court would not decree specific performance in any case with or without the statute.   *Md. Clay Co.* v. *Simpers*, 96 Md. 1.

The defendant contends, that notwithstanding the statute, insolvency is a necessary allegation of the bill.   The statute requires the defendant to show his solvency—that is, it shifts the burden of the issue to him.   It does no more.   The bill must allege the insolvency to make the issue.   85 Md. 360, see middle of p. 376.   In other words with insolvency alleged, it will be presumed until defendant shows the contrary, and he cannot escape the injunction or specific performance in a proper case unless he does show to the contrary, or files a bond.

Specific performance not being a matter of right, and the case made out by the bill being such that equity would not restrain or specifically enforce but for the insolvency of the defendant, then notwithstanding the statute, in order to show the good faith of the plaintiff, the plaintiff should be required to allege insolvency, otherwise Courts of equity might have dumped upon them many controversies arising from contracts, the breach of which sound in damages, where defendant was perfectly solvent, and where the case would be terminated as soon as that fact was shown.   It is impossible, however, to read the testimony of Parker without being forced to the conclusion that he believed and knew that Neal was fully able to respond in damages.

Specific performance is inequitable and would work an

unnecessary hardship upon the defendant. The granting of a decree for specific performance is not a matter *ex debito justitiæ*, but rests in the sound discretion of the Court. The Court looks at the situation of both the plaintiff and the defendant, and the relief will be afforded or denied as the circumstances of each case may require. *Dixon* v. *Dixon*, 92 Md. 438.

It is not meant by this that simply because defendant made a bad bargain he should be relieved from his contract. *Mc-Shane* v. *Hazelhurst*, 50 Md. 107. There are many cases where equity might refuse to relieve against a contract, but would not give its aid to enforce it. *Miller's Equity*, 765 *n*. But where the injury to the defendant which would inevitably follow the granting of the decree is greater than any possible injury which can be reasonably anticipated as happening to plaintiff in case of its refusal, then the Court is justified in refusing specific performance. *St. Regis Paper Co.* v. *Sante Lumber Co.*, 67 N. Y. S. 155, *supra*.

In this case specific enforcement of the contract practically deprives the defendant of the sale of his other timber, and confers upon the plaintiff no special or peculiar benefit, and its refusal deprives him of no right under his contract for which he can not be fully and completely compensated at law. Whatever may be said as to the effect of Code, Art. 16, sec. 199, on the first proposition of law stated herein under it can have no effect upon the proposition we are now discussing. It is perfectly manifest from its terms that the section has application only to those cases where specific performance was refused heretofore on the mere ground of an adequate remedy in damages *alone*. See case of *Brehm* v. *Sperry, Jones & Co.*, 92 Md. 408. And in looking at the situation of the parties and in determining the inequitableness of enforcing specific performance, the fact that the plaintiff has a full, adequate and complete remedy in damages is a "surrounding circumstance," which seems to us to be perfectly proper and just for the Court to consider in an application for specific relief.

Specific performance is impracticable, demanding a succes-

sion of acts extending over a period of time, and means an
attempted enforcement of personal services, requiring the ex-
ercise of skill and judgment.

·Courts of equity have invariably refused relief in all cases
requiring personal supervision of continuous acts, and all con-
tracts requiring special knowledge and skill. To enforce
specifically the contract in question would require the Court,
through its officers, to superintend and carry out the contract,
and in order to do this it would require the knowledge and
skill of mechanics and machinists. The trees would have to
be selected and cut, the machinery placed in position and
operated, and the lumber sawed in a certain way, of specified
dimensions and placed in certain places and positions for dry-
ing. The specific performance of acts of this character, if
practicable, would reduce the defendant to a position of ser-
vitude which no Court of equity has ever attempted; but,
apart from that there is no practicable way by which the de-
fendant could be compelled to carry out the decree. The fact
that the defendant was in contempt of Court would afford the
plaintiff no relief and the Court will never enter a decree
which cannot be enforced. And, if practicable, it is against
the policy of the equity Courts to superintend and supervise
work of this character extending over a long period of time
and determining questions of facts arising in regard to the
performance. And in no instance has a Court of equity at-
tempted to enforce a contract of this character. In support
of the above proposition, Pomeroy, in his work on Specific
Performance, section 312, says: "Contracts which by their
terms stipulate for a succession of acts whose performance can
not be consummated by *one* transaction but will be continuous,
and require protracted supervision and direction with the ex-
ercise of special knowledge, skill or judgment in such over-
sight * * * such as agreements to repair or to build, to
construct works, to build or carry on railways, mines, quar-
ries or other *analogous* undertakings, are not as a general rule
specifically enforced." And the learned author cites a bulk
of authorities in support of the above proposition. This is

well settled law, and a point upon which there seems to be no conflict of authority. If, however, there is any doubt as to the soundness of the above proposition, the Court's attention is particularly called to the case of *Ross* v. *Union Pac. Ry. Co.*, 20 Fed. Cases, No. 12080.

In the opinion in this case the doctrine upon which JUDGE ALVEY, in *Busey* v. *McCurley's Exrs.*, 61 Md. 436, relies as authority in support of the dictum in that case, to the effect that equity has jurisdiction to compel the building of a house, is clearly distinguished from the cases of the class now before the Court; and in all the authorities cited by him in support of that dictum, it will be found that the contract had been *executed* on the part of the plaintiff *and that the plaintiff had not a full and adequate remedy at law*. In every case cited by JUDGE ALVEY, it will be found that the railroad company had received a conveyance of the land and had entered into possession. The Busey case is commented upon to some extent in *West Boundary Co.* v. *Bayless*, 80 Md. 495, 504.

In *Baldwin* v. *Society Useful Knowledge*, 9 Simons Rep. 393, it was held that an agreement whereby the defendant was to furnish the plaintiff with drawings and engravings, could not be specifically enforced, as it could not compel the defendant to furnish the drawings. And so in *Grape Creek Coal Co.* v. *Spellman*, 39 Ill. App. 630, there was a contract to sell coal, the output of a mine, for a definite time at a stated price. In the suit for specific performance the Court said: "In the very nature of things, relief in respect to matters of that sort would be out of the question because not practicable. Here the Court cannot compel the defendant to employ men to work his mine, operate his machinery, furnish necessary supplies, produce the coal and deliver it to the complainant.

A succession of continuous acts, calling for his personal services and for the exercise of his judgment, experience and tact in reference to a complicated business, cannot be specifically compelled." The same principle was applied in *Wharton* v. *Stoutenburgh*, 35 N. J. Eq. 266, where it was held that equity will refuse specific performance of contracts requiring personal supervision and oversight.

And so such relief was denied in *Columbus, &c., R. R. Co.* v. *Watson*, 26 Ind. 50, on a contract to maintain and keep in repair cattle guards. And the same rule was applied in *McCann* v. *South Nashville R. R. Co.*, 2 Tenn. 773, and *Iron Age Pub. Co.* v. *Western Union*, 83 Ala. 498.

And so in *Beck* v. *Allison*, 56 N. Y. 366, it was held that equity will not enforce the specific performance of an agreement contained in a lease, upon the part of the lessor, to repair damages caused by fire. The Court on page 369, said: "No Court of equity has ever attempted the exercise of any such power. * * * How can the specific performance of things of this kind be decreed? * * * The mode, if undertaken, must be for the Court, first, specifically to determine what shall be done, and when and how, and then to enforce performance by attachment, as for contempt in case of alleged disobedience. Then will arise, not only the question whether there has been substantial performance, and if not, whether the defendant had any such excuse therefor, as will exonerate him from the contempt charged. It is obvious that the exe cution of contracts of this description under the supervision and control of the Court would be found very difficult, if not impracticable, while the remedy at law, in nearly if not all cases, affords full redress for the injury. It is for these reasons that such powers have *never been exercised* in this country."

And so in a building contract, *Martin* v. *Halley*, 61 Mo. 196, specific performance was refused. The same remedy was refused in a contract to fence a road, *Cincinnati, &c.,* v. *Washburn*, 25 Ind. 259. And so the bill for specific performance was dismissed in an action on a contract to mine and deliver ore, the Court holding that to do so would require personal acts and services involving labor, skill and judgment. *Campbell* v. *Rust*, 8 S. E. Rep. 664 (Va.)

In *Wilbrigham* v. *Hoover*, 74 Ga. 233, defendant was furnished with a saw-mill guaranteed to turn out a certain amount of lumber. Mill did not turn out quantity of lumber agreed upon. The bill asked for a decree requiring defendant to

specifically perform his contract *which it was in his power to do.* The Court said "we are satisfied that this was not a proper case for the specific performance of the contract. The agreement related to *personal* property and the application of skill and personal labor to it in order to make it conform to the uses intended by the parties  *  *  *  Besides, we are not aware of any power possessed by a Court of equity or any other Court, to compel a party to perform personal service for *another* which he had contracted to perform but was unwilling to render."

In *Starnes* v. *Newson,* 1 Tenn. Ch. 239, it was held that Chancery cannot enforce the specific performance of a contract to cultivate a particular crop in a designated way, and to cut, cure and deliver it in a certain prescribed manner. Likewise in an action for specific performance of a contract to repair saw mill, build fences, &c., the bill was dismissed. *Reed* v. *Vidal,* 5 Rich. Eq. (S. C.) 289. To the same effect was the decision in *Rutland Marble Co.* v. *Ripley,* 10 Wall. (U. S.) 339, on a contract to deliver marble of certain kinds, and in blocks of such a kind.

So in *Paddock* v. *Davenport,* 107 N. C. 710, there was a contract for the sale of all merchantable poplar, ash and cherry trees on defendant's land. It was agreed that the plaintiff was to mark the trees wanted and pay for the same when marked up, and it was further agreed that defendant would deliver a deed to timber when paid for, contract under seal, bill for specific performance was dismissed.

See note to *Standard Fashion Co.* v. *Siegel-Cooper Co.,* 68 Am. St. Rep. 754 to 761; *Am. & Eng. Ency. L.,* vol. 22, p. 1002; *Blanchard* v. *Detroit, &c., R. R. Co.,* 31 Mich. 43, 18 Am. Rep. 142; *Kidd* v. *McGinnis,* N. Dak. 48, N. W. Rep. 221; *Atlanta R. R. Co.* v. *Speer,* 32 Ga. 550, 79 Am. Dec. 305; *DeRenafinolini* v. *Corsetti,* 4 Paige (N. Y.) 265; *Williamson* v. *Briggs,* 20 Ill. App. 50. In *Bomer Brothers* v. *Canaday,* 79 Miss. 222, a contract to furnish lumber of certain dimensions, the same principle was applied. This case is almost identical to the case at bar; and the Court, in its opin-

ion, clearly states the reasons why Courts of equity will refuse specific performance in such cases.

The contract is vague, indefinite and uncertain in its terms and can not be specifically enforced. Uncertain as to subject-matter. Indefinite as to time of performance, both as to the delivery of the lumber and payment of the purchase price, and also the manner of payment.

. And furthermore the contract is silent as to the time, amounts and manner of payment and delivery. In what manner then can a Court of equity proceed to enforce a contract so vague and uncertain in its terms as this contract is? How can the Court say when, how and where the lumber should be cut and delivered and when and how the payments should be made? Courts of equity will not supply material omission in contracts and make contracts for the parties, and while there must always be the strongest grounds for specifically enforcing contracts, this will never be done where the contract is incomplete and uncertain in its terms. Assuming that the amount of lumber ordered by the plaintiff was one-fourth or one-fifth of the amount in tract, how could a Court of equity say to the defendant, in case he was cutting and selling the lumber to others, you must stop and give this to the plaintiff, where there is nothing said in the contract as to when the lumber shall be delivered to him and in what quantities. How could the Court say to the plaintiff you must send and get certain amounts of lumber at certain times and pay certain amounts therefor when the contract is silent on these very material matters? How is it practicable to enforce a contract of this kind either against the plaintiff or defendant? Could it be assumed that the defendant would select, cut, saw, dry and deliver the lumber ordered, going at great expense, running machinery, hiring men and paying them their wages, without pay át certain intervals? On these points the contract is silent.

In *Lighthouse* v. *Third National Bank*, 162 N. Y. 336, it was held that specific performance of a contract for the purchase of *bark* cannot be ordered where the bark to be deliv-

ered on the contract is an unascertained and unidentified portion of a large quantity. The Court said: "Under the plaintiff's contract, any one thousand cords of good, merchantable bark would have satisfied the specifications  *  *  *  upon the lands there were two thousand cords. Could the Morrison Laundry Company have insisted on the delivery to Lighthouse of any specific one thousand cords of that bark? We think not." The Court's attention is called to the fact that in this case a payment of $1,825 had been made on the bark purchased. And so in *McLaughlin* v. *Piatti*, 27 Col. 451, it was held that a bill of equity will not lie to enforce the specific performance of a bill of sale of five hundred head of cattle to be selected out of a large herd of which they form a part.

Here the decree requires the defendant to "*forthwith* proceed and continue to cut said timber and saw the same so far as it will admit thereof, until said agreement is fully executed and performed on his part, which shall be done on or before the expiration of two years from the making of said agreement." Can anybody say with any degree of certainty, after reading the contract as disclosed by the testimony, that the decree conforms to the contract? So far as shown the contract is silent as to the time of the performance or payment of purchase price (Parker merely states that he was always ready to pay for the lumber as delivered, not that that was a a term of the contract) and in decreeing performance as above and payment upon delivery, the Court may have been giving the plaintiff something to which he was "not fairly entitled by the terms of the contract into which he has entered."

*Lewis & Goldsborough* and *Albert G. Towers,* for the appellee.

This contract is definite in its terms and provisions. The quantity of lumber, its dimensions, the tract of timber from which it was to be taken, the price per thousand feet, the time, place and manner of delivery and the time of payment are all specifically stated and unequivocally proved.

The plaintiff has no adequate remedy at law by way of compensation in damages. The testimony of Parker, and he is uncontradicted ; shows that the inducement for him to buy the lumber was that it was to be furnished by Neal from a particular tract of timber with the superior quality of which both Parker and Neal were familiar, as well as its vicinity to Parker's mill, and all of the witnesses testify that so great was the scarcity of good timber in Caroline County, it was impossible for Parker to duplicate, in quantity and quality, the bill of lumber purchased by him of Neal without going outside of the county for it and thus incurring great trouble and expense, and, indeed Parker testifies that he made a trip into Virginia to buy lumber to take the place of that which he had bought of Neal but could not buy it.

This gives the lumber a special and peculiar value to the plaintiff below, in Caroline County and makes it specially inequitable in the defendant to refuse to perform his agreement. See *Equitable Gas Light Co.* v. *Baltimore Coal Tar Co.*, 63 Md. 300.

Parker also tells in his testimony why one-half of the lumber was to be one and a-half inches thick and the other half nine-eights inches thick. He says at those thicknesses he could re-saw the lumber and thus make two box heads or sides out of one according as the board was one and a-half or nine-eights inches thick, and in that connection he testifies as to the advantage to him of the class of lumber he purchased from Neal over lumber of inferior quality—thereby showing the impossibility of correctly estimating the damages sustained without trespassing upon the forbidden field of speculation.

In *Gottschalk* v. *Stein & Leopold*, 69 Md. 51, it is stated to be well settled law that "When damages will not be as beneficial to the purchaser as the performance of the contract, equity will interfere and decree the specific performance of the contract because an action at law for a breach of the contract will not afford the purchaser a complete and adequate remedy."

In this case damages cannot be as beneficial to the pur-

chaser (Appellee) as the performance of the contract, because of the very uncertainty of the amount of the damages sustained and the great difficulty in computing them.

If the appellant had desired to defeat a decree for specific performance of the contract set out in the bill of complaint, he should have shown affirmatively his solvency, or have given bond with approved security to perform the contract or pay all such costs and damages as may in any Court of competent jurisdiction be adjudged against him for breach or non-performance of such contract. See Code, Art. 16, sec. 199. *Phelps Juridical Equity*, sec. 101, note 1.

The appellant in his argument below relied upon two propositions to show that the decree of specific performance should not be be passed, both of which are untenable.

The first proposition urged was "That the specific performance of this contract is impractical, demanding a succession of acts extending over a period of time, and means an attempted enforcement of personal services requiring the exercise of skill and judgment." This proposition is clearly in the teeth of the following authorities. *Equitable Gas Light Co.* v. *Baltimore Coal Tar Company*, 63 Md. 285; *Sullivan* v. *Tuck*, 1 Md. Chy., 59. See also 2 *Story's Equity*, secs. 718, 719; *Busey's Exors.* v. *McCurley*, 61 Md. 446.

The second proposition relied on was "That there was more than two hundred thousand feet of lumber of the character purchased by the plaintiff on this tract (although the only witness sworn by the defendant said there was not that much of it), and that it would be impossible to ascertain which two hundred thousand feet were sold and when to be paid for."

The contract is perfectly plain as to "Two hundred thousand feet of boards" Parker bought, for the sawing was to commence on the first day of October, 1902, and to continue until the whole was sawed, and was to be "stuck up" on the mill yard and adjacent grounds as it was sawed, and to be removed as soon as "dried out" sufficient to warrant the removal.

It is apparent then, from the contract as alleged and proved,

that that lumber which is first sawed will be first "stuck up," and that which is first "stuck up" will be first "dried out" and that which is first dried out will be first removed, so that it is plain and certain that the first two hundred thousand feet of pine boards sawed by the appellant (the defendant)- of the dimensions specified in the contract from the tract of timber mentioned therein is the two hundred thousand feet bought by the appellee from the appellant.

The time of payment as alleged in bill and as proven is "Cash on delivery," and the delivery is complete when the lumber is "dried out" sufficiently to warrant the removal thereof.

If however there should be any uncertainty or ambiguity in the contract as alleged (which we in no sort admit) it is made absolutely plain by the evidence in the case and this it is competent to do. *Busey's Exors.* v. *McCurley*, 61 Md. 436.

McSHERRY, C. J. delivered the opinion of the Court.

This is a proceeding by a bill in equity to enforce specific performance of a contract for the sale of certain lumber. The contract as set up in the bill of complaint is substantially as follows : On the 20th of August, 1902, the appellee, Parker, purchased from the appellant, Neal, two hundred thousand feet of pine boards for the price of $8.50 per thousand feet, cash on delivery. One hundred thousand feet to be 10½ inches wide and 1½ inches thick, and the other one hundred thousand feet to be 10½ inches wide and 9-8 of an inch thick; all to be furnished by the appellant, Neal, from a tract of pine timber situated in Caroline County and known as the Bennett Todd tract. The said boards were to be sawed by the appellant and "stuck up" on the mill yard and from thence to be hauled away by the appellee, Parker, as soon as they had dried out sufficiently to warrant their removal. Neal was to begin cutting and sawing the growing timber on October 1st, 1892, and to continue until the completion of the quantity called for in the contract. In the answer filed by the appellant, he admits that he entered into a contract with the appellee, but

avers that the quantity of timber was to be one hundred and fifty thousand feet, and that the undertaking was in effect a conditional sale depending upon the contingency that the delivery of this quantity of 10½ inch boards would not injure the sale of the remaining lumber to be manufactured from said tract. At the time the contract was entered into, there was paid by the appellee to the appellant, to bind the bargain, a small sum as earnest-money. The contract as alleged in the bill was distinctly proved by the testimony of the appellee and of one Anderson, an entirely disinterested witness, who was present when the contract was entered into. The appellant, Neal, did not go upon the witness stand and has not denied the contract except as stated above in the answer. Upon hearing, the Court below decreed that the contract be specifically performed by the appellant. From that decree he has taken this appeal.

The question in the case is whether this is a contract whose specific performance can be enforced by a Court of equity ? It is quite obvious from a reading of the record that it was not performed by the appellant, because the price of lumber sensibly advanced between the date of the contract and the time that its performance was to be commenced.

All that prevents the fifth sub-division of section four of the Statute of Frauds from applying to this agreement is the fact that the contract *might* have been performed within a year. *Balto. Breweries Co.* v. *Callahan*, 82 Md. 106. There is nothing in the contract set out in the bill to indicate that it was not to be performed and fully completed within a year from its date.

The grounds upon which it is insisted that the decree appealed from should be reversed are, *First*, that the contract, being one for the sale of personal property, it is against the policy of Courts of equity to require its specific performance. *Secondly*, that the specific performance would impose an unnecessary hardship on the appellant and would confer no benefit on the appellee that he could not obtain in an action at law for damages. *Third*, that the specific performance is imprac-

ticable inasmuch as it means an enforcement of personal services requiring the exercise of skill. *Fourth*, because the contract is vague and indefinite.

Treating these four propositions in the inverse order in which they have just been stated, we need say no more with regard to the fourth, or last one, than we have already remarked, namely that the contract as set out in the bill of complaint is definite, clear and distinct and the proof establishing it precise and uncontradicted.

The third objection, that specific enforcement is impracticable because it involves the rendition of personal services requiring the exercise of skill is fully answered by the case of *Goodwin* v. *Co's Appeal*, 117 Pa. St. 514, and by the facts in evidence. In the case just cited it was held by the Supreme Court of Pennsylvania that specific performance will be decreed of a contract by the owner of a patent right to furnish articles covered by the patent, which he alone can supply, when they can be made without the exercise of any particular skill; and the facts before us fail to show that it requires any special skill to saw boards a certain width and thickness. It is of common knowledge that it does not. The remaining two grounds of objections may be treated together.

It is, as stated by Mr. Brantly in his admirable work on the Law of Contract, p. 252, quoting from *63 Md. infra*, "a general principle that equity will not decree specific performance of contracts for the sale of goods and chattels, not however, because of the nature of the property the subject-matter of the contract, but because damages at law calculated on the market price of the goods bargained for furnish in ordinary cases an adequate redress to the purchaser for the breach of the bargain by the vendor. But there are many exceptions to this general rule founded principally upon the inadequacy of the remedy at law in the particular case or the special and peculiar nature and value of the subject-matter of the contract." Thus a contract for the sale and delivery of chattels which are essential *in specie* to the plaintiff and which the defendant can supply while no one else can, will be specifically enforced. *Equitable Gas Com-*

*pany* v. *Coal Tar Company*, 63 Md. 299. And so in a case put by Lord Hardwicke in *Buxton* v. *Lister*, 3 Atk. 385, a man may contract for the purchase of a great quantity of timber, as a ship carpenter, by reason of the vicinity of the timber, and this may be well known and understood on the part of the seller; in such a case a specific performance would seem to be indispensable to justice. Whilst this is so, we fail to see how the facts of this case bring it within any of the well recognized exceptions to the general rule as quoted above from Mr. Brantly's work on Contracts. The lumber, to be supplied under the contract, was ordinary pine lumber, to be used for the manufacture of box shucks. Any other pine, of the same quality but not cut from the Todd tract, would be just as available for the purpose as that which the appellant agreed to deliver to the appellee. The failure of the appellant to perform his contract created a breach which could be adequately compensated in an action at law where the measure of damage would be the difference between the contract price and the market price of similar material at the time the lumber contracted to be delivered ought to have been delivered. It is true, there is some evidence in the record tending to show that the appellee made efforts to purchase other lumber when he ascertained that the appellant would refuse to comply with his contract, but there is abundance of testimony to prove that he could in the open markets of Baltimore have procured the same quality of lumber of the same dimensions available for the same uses at a very much higher price. Had he done this he would have been entitled to recover from the appellant the difference between the contract price of $8.50 per thousand and the higher sum he might have paid in the open market. This being so, the jurisdiction of equity would obviously be ousted, unless we have some statutory provision expanding that jurisdiction and extending it to a class of cases to which this belongs. This brings us to quite an interesting question.

By the *Act of 1888, ch. 263, now sec. 199 of Art. 16 of the Code of Public General Laws*, it is provided as follows:

"No Court shall refuse to specifically enforce a contract on the mere ground that the party seeking its enforcement has an adequate remedy in damages, unless the party resisting its specific performance shall show to the Court's satisfaction that he has property from which such damages may be made, or shall give bond with approved security in a penalty to be fixed by the Court to perform the contract or pay all such costs and damages as may, in any Court of competent jurisdiction, be adjudged against him for breach or non-performance of such contract."

This legislation has never been judicially interpreted. It was doubtless the policy of the Legislature in adopting it to do away with technical defenses to proceedings in equity instituted to compel parties to live up to their undertakings, and it was designed to preclude individuals who had entered into binding contracts from repudiating them at pleasure by merely electing to pay such damages for their breach as a jury in an action at law might assess. As was appositely observed by the Supreme Court of the U. S. in *U. P. R. C.* v. *Chicago R. I. & P. R. C.*, 163 U. S. 600. "It must not be forgotten that in the increasing complexities of modern business relations, equitable remedies have necessarily and steadily been enforced and no inflexible rule has been permitted to circumscribe them. As has been well said equity has contributed its remedies so that they shall correspond both to the primary right of the injured party and to the wrong by which that right has been violated and has always preserved the element of flexibility and expansiveness so that new ones may be invented or old ones modified in order to meet the requirements of every case and to satisfy the needs of progressive, social conditions in which new primary rights and duties are constantly arising and new kinds of wrong are constantly committed." We have just said that this provision of the Code has never been judicially interpreted. In fact it has never been alluded to but once in any decision of this Court since its adoption. In the case of *Brehm* v. *Sperry, Jones & Co.*, 92 Md. 408, it was referred to merely for the purpose of saying

that it had no application to the case because the refusal to
decree specific performance was not based *merely*, or at all, on
the ground that there was an adequate remedy at law.   But
here the statute flatly confronts us.   The appellee in this case
is obviously entitled to the relief he sought under his bill un-
less he has an adequate remedy at law.    There is no other de-
fense available to the appellant.   Therefore the Court could
only refuse to enforce specifically the contract upon "the
mere ground" that the remedy at law ousted the jurisdiction
of equity.   But it was to prevent just that result that the Act
of 1888 was adopted.   It means that or it has no significance.
"No Court shall refuse to specifically enforce a contract on the
*mere ground* that the party seeking its enforcement has an
adequate remedy in damages."    If the relief prayed for in this
case were denied, it would have to be denied *solely* upon the
ground that there is a remedy in damages, and if denied upon
that ground, it would be denied on the *mere* ground that com-
pensation could be recovered in an action at law.    If the pro-
vision of the Code is to be given any force and to have any
effect, this is the case, or the class of cases, to which it is ap-
plicable.   It undoubtedly revolutionizes, in a very marked de-
gree, the practice in cases of this character, and it would seem
that almost any contract, though we do not so decide, may
now be brought within the jurisdiction of a Court of equity
for specific performance when the only defense is that there is
an adequate remedy in damages, unless the party resisting
that specific performance shall show that he has sufficient
property to respond in damages or shall give bond as the
statute provides.   The manifest purpose of this legislation was
to compel parties either to specifically perform contracts
which theretofore a Court of equity could not compel them by
decree to perform because of the existence of an adequate
remedy in damages, or else, to give bond with satisfactory se-
curity which would be answerable for the failure to perform
in the event of damages being recovered for a non-perform-
ance.   The defendant who may be proceeded against has his
election to give bond and oust the jurisdiction of the Court

of equity and drive the plaintiff to a Court of law where damages may be assessed by a jury, or, upon failure to give bond, to subject himself to the jurisdiction of a Court of equity by whose decree he may be compelled to specifically perform his undertaking.

Entertaining this view of the case we must affirm the decree appealed from, though not precisely on the grounds or for the reasons stated in the opinion of the Circuit Court.

*Decree affirmed with costs.*