# BALTIMORE PROCESS COMPANY

*vs.*

## MY-COCA COMPANY ET AL.

*Specific Performance—Remedy at Law—Sale of Personalty.*

Code, art. 16, sec. 231, providing that specific enforcement of a contract shall not be denied because the party seeking relief has an adequate remedy in damages, unless the other party shall show that he has property from which damages may be made, or shall give bond, is not obnoxious to the Declaration of Rights, art. 5, or Md. Const., art. 5, sec. 6, as depriving one of his common law right to a trial by jury.     pp. 445-447

Code, art. 16, sec. 231, giving a right to specific enforcement of a contract even though there is an adequate remedy in damages, applies to a contract by which a corporation and the holders of the stock therein agreed to sell, for a named sum, and the other party to the contract agreed to buy, all the corporate stock, the good-will and trade mark of the corporation, and a certain secret formula, even conceding that a suit at law could have been maintained on such contract.     pp. 445-447

In a suit for specific enforcement of a contract, based on Code, art. 16, sec. 231, providing that such relief shall not be denied because there is an adequate remedy in damages, unless defendant shall show, that he has property from which damages may be made, or shall give bond, it was proper to pass an order overruling a demurrer to the bill, without giving to defendant an opportunity to show that he had property from which damages might be made, or to give bond, leave being granted him to file an answer on or before fifteen days after the date of the order.     p. 447

Contracts which are specifically enforceable by the buyer will also be enforced in equity at the instance of the seller.     p. 448

*Decided January 17th, 1924.*

Appeal from the Circuit Court of Baltimore City (DUFFY, J.).

Bill by the My-Coca Company and others against the Baltimore Process Company. From an order overruling a demurrer to the bill, defendant appeals. Affirmed.

The cause was argued before BOYD, C. J., THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*George S. Yost,* with whom were *E. Walton Brewington* and *Niles, Wolff, Barton & Morrow* on the brief, for the appellant.

*Robert W. Williams,* with whom was *Edward Guest Gibson* on the brief, for the appellees.

BOYD, C. J., delivered the opinion of the Court.

This is an appeal from an order overruling a demurrer of the Baltimore Process Company to a bill of complaint filed by My-Coca Company, Robert D. Johnston, R. S. Scott and Maude Marvin against the defendant. The bill prays for the specific performance of an agreement of February 19th, 1920, and that a decree may be passed directing the respondent to pay to the complainants the purchase price agreed upon, with all arrears of interest accrued thereon, and to accept from the complainants a conveyance and transfer of all the property and rights agreed to be transferred to the respondent under the said contract, and for general relief. It alleges that My-Coca Company is a corporation organized under the laws of the State of Alabama, and that the individual complainants are citizens and residents of Alabama, and the owners of all the stock issued and outstanding of that company; that the respondent is a corporation organized under the laws of the

State of Delaware, with an office in Baltimore, where the business of the corporation is regularly carried on. A contract filed with the bill is in part as follows:

"R. D. Johnston, as president of My-Coca Company, an Alabama corporation, and as attorney and agent for the holders of all the capital stock of said corporation, hereby agrees to sell and transfer to the Baltimore Process Company all said capital stock of My-Coca Company, together with the good will, formula and trade-mark of the My-Coca Company and the note book with formula purchased by said My-Coca Company from Mrs. Diva Brown, nee Mayfield as the original Coca-Cola formula in the handwriting of Dr. Pemberton, who invented it.

"The Baltimore Process Company hereby agrees to purchase said stock, formula and good will at and for the sum of fifteen thousand dollars ($15,000), payable as follows:

"Sixty days after date $5,000.00 in cash, and monthly thereafter $1,000.00 until a total of $15,000.00 shall have been paid.

"It is agreed the undersigned My-Coca stockholders shall retain title to all physical assets of the My-Coca Company; that is to say, its fixtures, merchandise, containers, accounts, truck and cash, but all advertising, crowns and labels shall be turned over to the Baltimore Process Company, and said stockholders shall satisfy all outstanding accounts, debts, and liabilities of every character of said My-Coca Company, so that the Baltimore Process Company shall take over its stock and business free of all liens and incumbrances.

"The undersigned agree to instruct a representative sent by the Baltimore Process Company to the My-Coca plant in the proper method of compounding My-Coca, and will turn over its books and accounts so that the business can be carried on by the Baltimore Process Company as fully and completely as it is now carried on by My-Coca Company."

The stockholders agreed to withdraw from the Cola business, and to refrain from engaging in said business in any way while said Baltimore Process Company, its successors or assigns, or the My-Coca Company, its successors or assigns, are engaged in the Cola business, and the complainants agreed to keep no copies of the formula and never to disclose it to anyone. It was further agreed that W. S. Scott, treasurer of the company, would furnish an affidavit that no reproduction had ever been made of the original formula in the Pemberton note book, and that none would be made prior to turning it over to the Baltimore Process Company, and that it had been preserved in total secrecy in the company's safety deposit box since he and his associates purchased the company seven years ago, and that the same was the true and original note book and formula, as secured from Diva Brown, née Mayfield. The contract is dated the 19th day of February, 1920, and is signed by My-Coca Company, by R. D. Johnston, president, and by the individual stockholders, by R. D. Johnston, attorney-in-fact, and by the Baltimore Process Company, by John Luntz, vice-president.

The bill alleges that, upon the execution of the contract, the complainant proceeded to take steps to carry out the contract, close down the business conducted by them, and in pursuance of that policy, the complainant corporation did not renew its advertising contracts, did not buy any new raw materials, disposed of large quantities of raw materials then on hand, did not renew contracts with bottlers, and in good faith performed all the requirements of the agreement on their part to be performed, prior to the time set for the first payment on account of the purchase price and the taking over of the business by the respondent.

It is further alleged that on April 19th, 1920, being the date fixed to make the payment of $5,000 in cash, the respondent failed to make payment and, on May 17th, 1920, definitely refused to carry out the terms of the contract and repudiated the same, and has never paid to the complainants, or any of them, any of the purchase price as set forth in the

contract. It alleges that in addition to the acts performed by the complainants, as hereinbefore set forth, constituting part performance of the contract by them, they have always, at all times been ready and willing to carry out in full all the terms of the said contract, but the respondent has at no time been ready or willing to accept the transfer of the stock, good will, formula and trademark and pay for the same in accordance with the contract. It is further alleged that the subject matter of the contract is made up of a number of unique and irreplaceable articles, including one hundred per cent. of the capital stock of the company, which was, at the time of the contract, closely held in the hands of three persons, who are the three individual complainants in this suit, and the said stock was not available for purchase or sale upon any stock exchange; that the value of the shares of stock was very great, and by reason of the facts aforesaid, had and has no definitely ascertainable market value; the good will of My-Coca Company, the registered trademark of the company, and the secret formula, are articles which could not and cannot be duplicated or replaced, and have a unique and peculiar value which cannot be measured adequately in any assessment of damages. The complainants therefore show that they have no adequate remedy at law for the enforcement of their rights under the contract.

The complainants further allege that the respondent instituted proceedings in the Circuit City Tenth Judicial Circuit of Alabama, in equity, against the My-Coca Company, and on the 11th of June, 1920, an injunction was issued in said proceedings against it, enjoining it and its officers, agents or employees and restraining them from prosecuting suits which the company had caused to be brought in the States of New York and Indiana, and restraining the company from instituting, or causing to be instituted any further suits seeking to enforce the contract of February 19th, 1920, or to collect any indebtedness created thereunder, which injunction remained in force until February 5th, 1923, when the pro-

ceedings above referred to in Alabama against the My-Coca Company were dismissed.

The defendant demurred to the whole bill, and for cause of demurrer showed—

"First:   That the plaintiffs have not stated in their bill such case as entitles them to any relief in equity against this defendant.

"Second:   And that the plaintiffs have a plain, adequate and complete remedy at law for the wrongs alleged in said bill.

"Third:   And for other reasons to be assigned at the hearing of this demurrer."

In the brief filed for the appellant is found this statement:

"We do not understand it to be seriously contended that the case presented by this bill is such a case as could have been sustained in a court of equity prior to the passage of the Act of 1888, Chapter 263, now codified as Section 231 of Article 16 of the Annotated Code of Maryland. * * *

"On the other hand, the appellant does not contend that the existence of a plain, adequate and complete remedy at law is a sufficient reason in itself for sustaining the demurrer if, in the opinion of the court, Section 231 of Article 16 is applicable to the case.

"We are therefore confronted at the outset with the question of the proper construction of this Act, which provides that:

" 'No court shall refuse to specifically enforce a contract on the mere ground that the party seeking its enforcement has an adequate remedy in damages, unless the party resisting its specific enforcement shall show to the court's satisfaction that he has property from which such damages may be made, or shall give bond, with approved security, in a penalty to be fixed by the court, to perform the contract or pay all such costs and damages as may, in any court of competent jurisdiction, be adjudged against him for breach or nonperformance of such contract.' "

The position taken by the appellant is that the above quoted statute does not apply to this case because:

"(a)　This case does not come within the evil intended to be remedied by the statute;

"(b)　Such construction would render the statute obnoxious to Article 5 of the Declaration of Rights, and Article 15, Section 6, of the Constitution of Maryland."

It seems, however, to us that both of those questions have been settled by this Court. In *Neal* v. *Parker,* 98 Md. 270, CHIEF JUDGE MCSHERRY said that this statute had never been alluded to but once in any decision of this Court since its adoption, referring to *Brehm* v. *Sperry, Jones & Co.,* 92 Md. 378, and that was for the purpose of showing that it had no application to the *Brehm case,* "because the refusal to decree specific performance was not based merely, or at all, on the ground that there was an adequate remedy at law," and he then added: "But here the statute flatly confronts us. The appellee in this case is obviously entitled to the relief he sought under his bill unless he has an adequate remedy at law. There is no other defense available to the appellant. Therefore, the Court could only refuse to enforce specifically the contract upon 'the mere ground' that the remedy at law ousted the jurisdiction of equity. But it was to prevent just that result that the Act of 1888 was adopted. It means that, or it has no significance."

Then he went on to say "If the provision of the Code is to be given any force and to have any effect, this is the case, or the class of cases, to which it is applicable. It undoubtedly revolutionizes, in a very marked degree, the practice in cases of this character; and it would seem that almost any contract, though we do not so decide, may now be brought within the jurisdiction of a court of equity for specific performance when the only defense is that there is an adequate remedy in damages, unless the party resisting that specific performance shall show that he has sufficient property to re-

spond in damages, or shall give bond, as the statute provides. The manifest purpose of this legislation was to compel parties either to specifically perform contracts which theretofore a court of equity could not compel them by decree to perform, because of the existence of an adequate remedy in damages, or else, to give bond with satisfactory security which would be answerable for the failure to perform in the event of damages being recovered for a non-performance." In that quotation, it will be observed that the alternative is (evidently unintentionally), omitted "unless the party resisting its specific enforcement shall show to the Court's satisfaction that he has property from which such damages may be made, or shall give bond," etc.

It will be seen that CHIEF JUDGE McSHERRY said, in speaking of the lumber for which compensation was sought for failure to deliver: "The lumber, to be supplied under the contract, was ordinary pine lumber, to be used for the manufacture of box shucks. Any other pine of the same quality, but not cut from the Todd tract, would be just as available for the purpose as that which the appellant agreed to deliver to the appellee." It was also said by him: "The failure of the appellant to perform his contract created a breach which could be adequately compensated in an action at law, where the measure of damage would be the difference between the contract price and the market price of similar material at the time the lumber contracted to be delivered ought to have been delivered." And in the course of the opinion it is distinctly said that there was "abundance of testimony to prove that he could in the open markets of Baltimore have procured the same quality of lumber of the same dimensions available for the same uses at a very much higher price. Had he done this, he would have been entitled to recover from the appellant the difference between the contract price of $8.50 per thousand and the higher sum he might have paid in the open market. This being so, the jurisdiction of equity would obviously be ousted, unless we have some statutory provision expanding that jurisdiction, and extending it

to a class of cases to which this belongs. This brings us to quite an interesting question."

CHIEF JUDGE MCSHERRY thus quoted and passed on this statute, as shown above, and, although the lower court had decreed that the contract be specifically performed by the appellant, this Court affirmed the decree—distinctly and only relying on the statute. It is difficult to understand, therefore, why that case is not applicable to this, if there be no defense other than an adequate remedy at law, upon which the appellant relies. That there can, in our judgment, be no objection on constitutional grounds, would seem to require no further comment, after what we have quoted from, or said about, the case of *Neal* v. *Parker.* In *Teschner* v. *Falkenwalde,* 135 Md. 114, where the question was whether there was error in declining specific performance of a contract for the delivery of certain promissory notes in settlement of the balance of purchase price agreed to be paid for the assignment of one-half of certain patent rights, this statute was again before us, and, although there were other grounds relied on for the affirmance of the order, the statute was considered and there was no suggestion that the Court had any doubt about its validity. It was again cited in *Slingluff* v. *Franklin Davis Nurseries,* 136 Md. 302, but not relied on, as it was not necessary to dispose of the case on that ground.

Just why the court cannot enforce its decree, if one is passed, as suggested by appellant, does not appear. Nor do we think the point well taken that opportunity should have been given to the defendant to show to the court's satisfaction that the defendant has property from which damages could be made, or to furnish bond. Leave was granted to the defendant to file an answer on or before fifteen days after the date of the order, and if it desired to do either and needed more time, of course the court would have extended the time, if necessary. Thus far the court has only overruled the demurrer, and followed the usual practice of allowing a reasonable time in which the defendant could answer

The appellees relied on several other points to sustain the action of the lower court, and while some of the questions are interesting and, we may say, seem to be well settled by the authorities, it is unnecessary to prolong this opinion to an extent that would be required, in order to properly discuss them—especially as the points we have already considered in reference to the statute referred to are the only ones relied on by the appellant. The general rule adopted by courts of equity as to decreeing specific performance of contracts for the sale of goods and chattels, shares of capital stock in corporations and other personal property, has so many exceptions that nothing can be accomplished by quoting from the authorities. In *Equitable Gas Light Co.* v. *Baltimore Coal Tar Co.*, 63 Md. 285, CHIEF JUDGE ALVEY, after stating the well recognized general principle as to the action of courts of equity in reference to bills for specific performance of sales of personal property, referred to the fact that there were many exceptions to it, and cited 2 *Story's Equity,* secs. 718 to 725, where he said the general rule and the exceptions would be found fully discussed, with reference to all but the very recent cases. See also *Gottschalk* v. *Stern,* 69 Md. 51; *Brantly on Contracts* (2nd ed.), 461; *Miller's Eq. Proc.,* 770, 771; 25 R. C. L. 293-295, 298; *Pomeroy's Eq. Rem.* (2nd ed.), par. 752.

The point relied on by the appellees, that contracts which are specifically enforceable by the buyer will also be enforced in equity at the instance of the seller, is supported by many authorities, but as it is not necessary in this case to do more, we will only refer to *Pomeroy's Eq. Rem.* (2nd ed.), par. 747, where the subject is referred to and, in note 18 and other notes under that paragraph, a great many decisions in England and in this country are cited. There are many interesting discussions on the subject in the decisions and text books, but there does not seem to be much, if any, question as to whether stock in corporations, if it be such as is not in the market, or cannot be conveniently obtained, or

such as is in this case, or other personal property, which may be spoken of as unique and irreplaceable articles, etc., may be the subject of specific performance, but we forbear from entering upon a discussion of them.

A question has occurred to the Court that was not referred to by either side which we will mention, but not discuss at length: Is it certain that a suit at law could be maintained on this contract? Just what the law may be on the subject in Alabama we are not informed, but at least in most jurisdictions, if not all, rights of owners of shares of stock of a corporation are very different from those of the corporation itself. This contract was made by all of the shareholders and the company, and there was a sale of all the capital stock, which belonged to the shareholders, and the good will, the formula and trademark, which belonged to the company. Of course we are not now considering a question which might under some circumstances arise between the owners of all shares of the stock of a corporation and the corporation, but we are considering the right of the shareholders and the company to unite in a suit at law against a third party, on such a contract as this. The appellant agreed to purchase said shares of stock, the formula, the good will and trademark at and for the sum of $15,000, payable as stated above, but how much for the stock, or formula, or trademark, is not shown. The company is not entitled to recover any of the purchase money for the shares of stock and the stockholders are not entitled to recover any of it, for the formula, good will, etc. It is not even shown how much stock each of the stockholders own, but if we assume it is one-third each, then how much of the $15,000 is for the whole of the stock. No point was made before us as to such questions, as we have already said, but on the trial of an action at law before a jury these questions would seem to present difficulties. Indeed, in 4 *Pomeroy's Eq. Jur.*, sec. 1403, the "impracticability of a legal remedy" is said to be the ground of jurisdiction for a court of equity. In that section there are two

classes named: (1) "Where, from the lack of some legal formality or condition in the contract, no action at law can be maintained; (2) Where, from some peculiar feature of the contract, either in its subject matter or in its terms, or in the relations of the parties, it is impossible to arrive at a legal measure of damages at all, or at least with any sufficient degree of certainty."

But whether a suit at law could be maintained at all under such circumstances as we have stated above, would seem to us to at least require some further consideration, although we do not deem it necessary now to determine the question. An answer may clear up some difficulties which now suggest themselves.

*Order affirmed, the appellant to pay the costs .*