## CIRCUIT COURT OF BALTIMORE CITY.

Filed December 14, 1926.

NICHOLAS K. BROWN, TRADING AS THE ST. REGIS,
VS.
EMANUEL P. SUMMERFIELD.

*Willis R. Jones* for complainant.
*Vernon Cook* and *Richard B. Tippett* for defendant.

FRANK, J.—

The amended bill of complaint herein asks for the specific performance of a contract of sale between the parties hereto, embodied in the following two instruments of writing:

"March 22, 1926.

In consideration of $200 paid on account of purchase price, receipt whereof is hereby acknowledged, Nicholas K. Brown hereby agrees to sell and E. P. Summerfield hereby agrees to buy at a price equal to 50% of the invoice price of all equipment now situated in the St. Regis Restaurant and 50% of the cost of all repairs and additions made to the building 1817 N. Charles street, by the St. Regis Restaurant and 100% of the invoice price of all stock of merchadise on hand at date of settlement. Settlement within 30 days from date hereof. Delivery

upon payment of balance of purchase price. Time is of the essence of this contract.

Witness our hands and seals this 22nd day of March, 1926.

(Signed) Nicholas K. Brown (Seal)
Rosala Brown (Seal)
E. P. Summerfield (Seal)

Signed, sealed and delivered in the presence of

(Signed) Willis R. Jones."

"This agreement made this 17th day of April, 1926, between Nicholas K. Brown and E. P. Summerfield.

Witnesseth, that the agreement heretofore signed by the parties under date March 22, 1926, in reference to sale of the St. Regis Restaurant shall hereby be modified as follows:

The payments under said agreement are to be as follows: Eight hundred dollars ($800) cash, the receipt whereof is hereby acknowledged, fifteen hundred dollars ($1,500) to be paid May 3, 1926. The parties hereto mutually agree that they will join in requesting all of the present creditors of Nicholas K. Brown to release Mr. Brown from their respective claims and that Mr. Summerfield will assume the payment thereof and will pay them such amounts in cash as may be found necessary and will pay their respective balances after the lapse of such period of credit as said creditors may be willing to give.

There shall be deducted from the purchase price to Mr. Brown all amounts released by creditors and assumed by Mr. Summerfield, and pertaining to the St. Regis Restaurant, and included in the list heretofore submitted by Mr. Brown to Mr. Summerfield and the balance due under the original agreement shall be paid as follows: One-half by promissory note, payable four months after May 3, 1926, and the remaining one-half by promissory note, payable eight months after May 1, 1926, both of said two notes to be secured by chattel mortgage upon the fixtures and equipment mentioned in the agreement of March 22, 1926. The said E. P. Summerfield shall have the right at any time to anticipate the payment of said notes, and said notes shall bear interest at the rate of six per cent. from May 3, 1926. The itemized statement as to the cost of equipment, repairs and merchandise submitted by Mr. Brown is subject to verification by Mr. Summerfield on or before May 3, 1926.

It is agreed that the transfer of the property is to be made on May 3, 1926, and the original agreement of March 22, 1926, in all other respects is ratified and confirmed, and that time is of the essence of the contract.

Witness the hands and seals of the parties hereto.

(Signed) Nicholas K. Brown (Seal)

(Signed) E. P. Summerfield (Seal)

Witness:

(Signed) Vernon Cook

(Signed) Willis R. Jones."

The demurrer to the amended bill of complaint contests the right of specific performance as prayed.

The difficulties in the case largely grow out of the difficulty of a proper construction of the two papers above recited and, particularly, of the first one dated March 22, 1926, which, standing by itself, might not be sufficiently definite to constitute a valid contract between the parties. Some of the difficulties are corrected by the subsequent agreement of April 17, 1926, which was apparently drawn by lawyers. I find the combined meaning of the two instruments to be in effect a contract for the sale of the St. Regis Restaurant, the purchase price to be 50% of the invoice price of all equipment in the restaurant on March 22, 1926; 50% of the cost of all repairs made to the building, No. 1817 N. Charles street, by the St. Regis Restaurant, and the full invoice price of all the stock and merchandise on hand at the time of the settlement.

First. Defendant claims that there is a plain, adequate and complete remedy at law for his alleged breach of the contract; that, therefore, equity has no jurisdiction. As I understand the effect of the decisions of the Court of Appeals of Maryland, as a consequence of the statute, this is a defense that can no longer be raised by demurrer to a bill of complaint. Certainly this is true, unless the bill of complaint, upon its face, shows that the defendant is financially responsible and able to respond to any judgment at law for damages against him. Generally speaking, this defense can now be raised only after the defendant has shown that he has sufficient property to respond to any damages, or shall

give bond as the statute provides. This is true in the pending case.

Neal vs. Parker, 98 Md. 254, 269.

Baltimore Process Co. vs. My Coca Co., 144 Md. 439, 445.

Brummel vs. Realty Co., 146 Md. 56, 65.

Second. The next contention made is that the contract between the parties is too vague and indefinite and, therefore, incapable of specific enforcement. With this contention I do not agree. It is a sale of the St. Regis Restaurant. This, under the authorities, means a sale of its assets and business as described in the instruments above set out. The subject matter of the sale is sufficiently described, and the purchase price and terms of payment are likewise definitely set out. Such a sale of the business carries with it by reasonable intendment or implication the good will of the business.

Wilmer vs. Thomas, 74 Md. 485, 488, 28 C. J. 738.

In Beatty vs. Dickson, 3 Ont. W. R. 2, 4, it was held that upon the sale of a dry goods store the word "business" represented what the seller sold, namely, the good will, together with the right to use the firm name.

In Shipwright vs. Clements, 19 Weekly Reporter, 599, 600, it was held that "the sale of a business is a sale of the good will. It is not necessary that the word 'good will' should be mentioned."

Third. The sale includes the stock of merchandise on hand at the date of settlement and, by the terms thereof, that time was postponed until May 3, 1926, although the date of the original agreement was March 22, 1926. It was the apparent intention of the parties that the stock of merchandise, which in its nature was perishable, should be constantly renewed during this period. It is contended that the contracts call for the sale of property not in existence at the time of their making and that such a contract is incapable of specific enforcement. The Court of Appeals held in the case of Ward vs. Newbold, 115 Md. 689, 692 to 694, citing Kennedy vs. Hazleton, 128 U. S. 667, that "a Court of Chancery will not decree specific performance of an agreement to convey property which is not in existence." This rule is generally laid down with respect to interests in real estate not yet created at the time of the making of the contract of sale. The case in the Supreme Court of the United States related to a patent right not in existence.

It seems to me that this rule, primarily applicable to real estate, would have added force in a case like the present. No limitation upon the power of the vendor to change the stock of merchandise on hand appears in the agreements. The control by him over the quantity and quality of the stock of merchandise at the time of settlement is not restricted. For example, it would be within his power to acquire and then have a stock of large size and unmerchantable quality and, under the terms of the contracts, the vendee would be bound to pay therefor at invoice price and the vendee would be powerless to object. Such a situation is not one that commends itself to the discretion of the Chancellor in exercising the extraordinary remedy of specific enforcement, and for this reason the contracts are not capable of specific performance.

This conclusion requires that the demurrer to the amended bill of complaint be sustained, and this will accordingly be done with leave to the plaintiff, if so advised, to further amend his bill of complaint within fifteen days.