Burton, *et al.*, *vs.* Marshall.—1846.

---

WILLIAM E. BURTON, C. S. T. BURKE AND WIFE, *vs.* E. A. MARSHALL.—*December* 1846.

Upon a contract made by a husband for himself and his wife, that his wife should perform at the theatre of the manager named therein, during a certain period, for a certain salary, a court of equity will not enjoin the wife from performing at any other theatre, during the same period; nor the husband from permitting her to change her residence; nor another manager from giving her employment, within the term, as an actress; neither can specific execution of such a contract, as against the husband or wife, be decreed.

Upon a contract, affirmative in all its provisions, the execution of which could not be enforced in equity, a court of equity cannot be asked to engraft upon it a negative stipulation, and restrain its breach by injunction.

A court of chancery never lends its aid in furtherance of injustice and oppression.

While a complainant is prosecuting a suit at law, to recover damages for the violation of a contract, it is both unjust and oppressive, at the same time and for the same injury, to seek to visit the defendant, in a court of equity, with the pains and penalties of injunction, by which he might be stripped of all means of subsistence, or violating the injunction, be imprisoned for contempt.

Equity will not listen to a complainant who thus presents himself for relief, until he makes his election in which court he desires to proceed in pursuit of his rights, and has dismissed, or agreed to dismiss, his proceedings in the other.

A party is entitled to recover but one compensation for an injury received.

All the covenants and agreements of a *feme covert*, (except in regard to separate property,) are null and void at law and in equity. She cannot be compelled to perform them, whether entered into by herself, or, on her behalf, by her husband, with or without her consent.

To restrain a married woman by injunction upon the footing of her contract, as if she were single, would, by indirect means, be an abuse of the process of the court.

THIS was an appeal from the equity side of *Baltimore* county court.

The bill, in this case, was filed by *Ethelbert A. Marshall*, on the 8th October 1846, and founded upon the following contract, made by a certain *C. S. T. Burke*, for himself and wife, by which it was alleged she was bound :—

"PHILADELPHIA, 1*st May* 1846.

"*Charles Burke*, and his wife *Margaret*, now of *Philadelphia Museum*, are engaged to perform under the direction of *E. A. Marshall*, or his agent, at either *The Holliday Street Theatre, Baltimore*, or *The Walnut Street Theatre, Philadelphia*, at a salary of twenty dollars each, for a period of ten weeks, and a joint benefit at either of the cities, they receiving jointly, one-third of the receipts. At the expiration of the said period of ten weeks, (the commencement of which shall be on or about the 9th June, next ensuing,) *Mrs. Burke* is further engaged for the full period of *The Walnut Street Theatre* season, at a salary of $22 per week: (same in the months of January and February, when the salary shall be $20 per week, only.) *Mrs. Burke* to have, in the course of *The Walnut Street Theatre* season, (which shall be understood to extend to the 4th July

1847,) two benefits, and to receive one-third of the gross receipts of each; and said continuation of the latter engagement, after the before named period of ten weeks, shall also be understood to be either for *Baltimore* or *Philadelphia*, as aforesaid, for *Mrs. Burke* only.  C. S. T. BURKE."

The bill alleged, that *Burke* had refused to permit his wife to perform; had withdrawn her from *M's* company of performers, and engaged her services to a rival company, in violation of his contract; that *William E. Burton*, manager of the *Front Street Theatre, Baltimore*, with a full knowledge of the contract aforesaid, had engaged the said *Margaret B.* from her husband; and that she is now in the service of the said *Burton;* that the complainant has brought his action at law against the said *Charles* for violation of the contract aforesaid, which he fears will not avail him, from the inability of the said *Charles* to pay any damages, nor could he recover at law adequate damages; that he has requested the said *M.* to return to his service, which she refuses, and her husband refuses to require her to return. *Prayer,* for an injunction against *W. E. Burton,* prohibiting him from suffering the said *M. B.,* during the term of her engagement aforesaid, to perform as an actress in any theatrical corps under the management of the said *Burton;* also against *C. B.,* prohibiting him from removing without the jurisdiction of this court, his said wife, until, &c.; and also against *M. B.* from performing as an actress in any other theatrical corps, during the continuance of the said contract, &c.; and for subpœna.

Upon this bill, *Baltimore* county court, (LE GRAND, A. J.,) ordered an injunction, which was issued, on filing bond in the penalty of $500.

The defendants all appeared in the cause, and *Burke and wife* filed their joint answer to the bill, which was also answered by *Burton.*

The defendants then appealed, under the act of 1835, from the order granting the injunction, to this court; having first given bond to prosecute their appeal with effect.

The appeal was argued before DORSEY, SPENCE, MAGRU-
DER and MARTIN, J.

By F. P. LOVEGROVE for the appellants; and
By REVERDY JOHNSON for the appellees.

DORSEY, J., delivered the opinion of this court.

In considering the propriety of the injunction before us, it
may not perhaps be out of place to refer to some of the familiar
and well established rules which should be observed in refer-
ence to the issue of such writs. In 2 *Story's Eq.*, sec. 959*a*,
it is stated, "that the granting, or refusing of injunctions, is a
matter resting in the sound discretion of a court of equity, and,
consequently, no injunction will be granted, wherever it will
operate oppressively;" "or where it is not the fit and appro-
priate mode of redress, under all the circumstances of the case;
or where it will or may work an immediate mischief." And
in sec. 959*b*, of the same book, the learned commentator says,
"it ought, therefore, to be guarded with extreme caution, and
applied only in clear cases; otherwise, instead of becoming an
instrument to promote the public, as well as private, welfare,
it may become a means of extortion, and, perhaps, irreparable
injustice."

The appeal in this case, has been taken to the order of the
4th of October 1846, granting the injunction prayed for in the
bill of complaint. The bill does not seek a specific perform-
ance of the contract, of which it charges the violation, and,
therefore, does not ask for the injunction, as ancillary to such
a proceeding, or as restraining the violation of the alleged agree-
ment, until a decree for such performance can be obtained.
On the contrary it is conceded, as it well might be, both on
reason and authority, that such is the nature of the engage-
ment, or contract of *Mrs. Burke*, (if contract it can be called,)
that its enforcement in a court of equity, by way of a decree
for its specific execution, cannot be obtained. What are the
means, then, by which the complainant seeks, through the
medium of a court of equity, to coerce *Mrs. Burke* to the ob-
servance of her engagement? Why, by the imposition of

certain prohibitions, restrictions, pains and penalties, by which she is offered the mild alternative of returning to the service of the complainant; or, (if dependent on her professional labors for a support,) she must either beg her bread, or be incarcerated within the walls of a public prison, and this, too, is to be her condition, without having first given her an opportunity of shewing, (should such be the fact,) that neither legally, equitably or morally, is she under the slightest obligation to return to the service of the complainant. For the granting of such relief in such a case, it is believed, no sufficient authority can be produced.

To sustain the injunction before us, two cases have been referred to by the complainant's solicitor. The first, that of *Martin vs. Nutkin,* 2 *Pr. Will.,* 266, "where certain persons owning a house in the neighborhood of a church, entered into an engagement to erect a cupola and clock, in consideration that the bell should not be rung at five o'clock in the morning, to their annoyance. The agreement being violated, an injunction was afterwards granted, to prevent the bell being rung at that hour." The second case was, that of *Morris vs. Colman,* 18 *Ves.,* 437, "where, upon the same ground a celebrated play-writer, who had covenanted not to write any dramatic performance for another theatre, was, by injunction restrained from violating the covenant." By so doing, in these two cases, the parties' defendants were required to perform that which, by the express stipulations of their contracts, they were bound to do. The granting the injunctions there, was in effect and substance, if not in form, the decreeing the specific execution of the agreement of the parties, according to the express and unequivocal terms of their compacts. But was such the character of the injunction issued in this case? Did the engagement or contract of *Mrs. Burke,* contain any negative stipulation, that she would not do that which the injunction, issued, prohibited her from doing? Unquestionably not. Her only agreement was to render the services, in the company of the complainant, which were specified in her contract. The injunction, then, did not command the performance of that which was stipulated in the agreement, but prohibited the

doing of acts, in relation to which she had made no stipulation. The cases cited, therefore, are not precedents for, and give no countenance to, the injunction issued in this case.

In *Kemble vs. Kean,* reported in 6 *Simons,* 333, and to be found in 9 *Condensed Cha. Rep.,* 296, after a full examination of all the cases upon the subject, the vice-chancellor decided, that where the proprietor of *Covent Garden Theatre* agreed with an actor, that he should act for twenty-four nights, during a certain period of time, at their theatre, and that, in the meantime, he should not act at any other place in *London,* that the court cannot enforce the positive part of the contract, and, therefore, it will not restrain, by injunction, a breach of the negative part. And in *Kimberley vs. Jennings,* 6 *Simons,* 340, and also reported in 9 *Cond. Ch. Rep.,* 300, it was in like manner determined, that where a party agreed not to do a particular act, and there are other terms in the agreement, which are so vague, that the court cannot enforce them, it will not grant an injunction to restrain the breach of the negative term. If these cases are to be regarded as of any authority, upon what principle could the complainant, under a contract affirmative in all its provisions, and the execution of which could not be specifically enforced, ask a court of equity, in effect, to engraft upon it a negative stipulation, the breach whereof was to be restrained by injunction, as if it had formed a part of the written agreement of the parties?

But, conceding for the moment, that if primarily applied to, a court of equity could have granted the relief which has been extended to the complainant, under the circumstances in which it has been sought, it ought not to have been granted. A court of chancery never lends its aid in furtherance of injustice or oppression. Is it not unjust and oppressive in the complainant, whilst prosecuting at law a suit, by which he is to be indemnified for all damage he has sustained by the refusal of *Mrs. Burke* to perform her engagement, that at the same time, and for the same injury, he should seek to visit upon her in a court of equity pains and penalties, by which she may be stripped of all means of subsistence, or be consigned to loathsome imprisonment in jail? Equity will not listen to a complainant

who thus presents himself for relief, until he makes his election, in which court he desires to proceed in pursuit of his rights, and has dismissed, or agreed to dismiss, his proceedings in the other. The complainant is entitled to recover but one compensation for the injury he has sustained. That, the law presumes, he will obtain in his action at law; and to that, and nothing more, is he, in any aspect of his case, entitled, either in the contemplation of a court of law or of equity. To him, it is a full and adequate indemnity. In mitigation of the damages to be recovered at law, no losses or sufferings, inflicted upon Mr. or Mrs. Burke, by the proceedings in equity, can be given in evidence. To them, in such a case, neither law or equity affords any adequate redress. It follows, as a necessary consequence, that the proceedings in both courts, at the same time, should not be tolerated.

In the views thus far expressed, we have treated Mrs. Burke as a person sui juris, and bound to the performance of the engagement entered into on her behalf, in the same manner that she would have been, had she been a feme sole. But such was not her condition. Being a feme covert, except in regard to her separate property, all her covenants, contracts, promises and agreements, as well in courts of law, as of equity, are absolutely null and void, and she is under no obligation, and cannot be compelled, to perform them, whether entered into by herself, or on her behalf by her husband, with or without her consent. From this exemption, it results as a corollary, that all proceedings emanating from a court of justice against her, which disclose her coverture, and seek the enforcement of any such contract, are fruitless and illegal. If the issuing of the injunction against Mrs. Burke, could, in this case, be sustained, her violation of it, would cause to be visited upon her all the consequences incident to an attachment for a contempt of court; and thus, by indirect means, and the abuse of the process of a court of equity, she would be as amenable for her contracts entered into during coverture, as those made by her dum sola.

This court will sign a decree reversing the order of the 4th of October 1846, and dissolving the injunction issued there-

under, and dismissing the complainant's bill, with costs, in this court and the court below.

INJUNCTION DISSOLVED AND BILL
DISMISSED, WITH COSTS.