## THOMAS GURLEY *vs.* ISRAEL HITESHUE.—*December,* 1847.

Payment of a part of an admitted debt is neither in law nor equity a good consideration for abandoning all claim to the residue. It is only a discharge *pro tanto.*

To entitle a debtor to exemption from the payment of his debt, either at law or in equity, he must prove a release or payment, or an agreement to receive some equivalent in satisfaction.

Where a creditor after an execution levied, gives a release or receives payment of his judgment, that defence would be properly made in the court of law, at the return of the execution, and no where else.

After an execution levied, the debtor paid off part of the judgment, and entered into an agreement with the plaintiff, that for the balance he would convey his interest in a lot, upon which the plaintiff agreed to discharge him. This agreement is not sufficient to arrest proceedings on the judgment.

Under such an agreement, where the debtor seeks a perpetual injunction against his creditor, his bill must be considered as one to enforce specific execution of his contract. The injunction in such case maintained, would accomplish all the purposes of specific execution.

A decree of specific execution here, would require the creditor to receive a conveyance and execute a release, and that release presented to a court of law, would prevent further proceedings on the judgment.

The leading object in every case of specific performance, is to carry into full effect, the exact object and intentions of the parties to the agreement on which its demand depends.

This is done on the ground, that where an honest and fair contract has been entered into by parties competent to engage without imposition or mal-practice on either side, no advantage should be taken by either of any subsequent change of circumstances, or of opinion which might alter or be supposed to alter, the benefits resulting to the parties respectively.

Whether with a fraudulent design or innocently, yet if a false impression has been conveyed and made the basis of a contract, the extraordinary jurisdiction of the court will not be exercised by coercing a specific performance.

Where a defendant, debtor by judgment, paid the plaintiff a part of his debt and proposed to pay the balance by the conveyance of a lot in which he had no interest, in consideration of a release to be granted him, and then seeks to procure a specific execution of the contract, it is asking the court to compel the creditor to exonerate him without consideration. If he intended to obtain a release, by nominally giving an equivalent, knowing it to be so, it would be a fraud.

A decree founded upon agrreement to convey land in consideration of a release of a debt should provide as well for the transfer of the property as the execution of the release.

APPEAL from the equity side of *Carroll* County Court.

The bill in this cause was filed on the 26th May, 1842, by the appellee, and alleged that at the September term of *Carroll* county court, 1841, *Thomas Gurley* as the sheriff of *Frederick* county, recovered against your orator and *John B. Boyle*, who were sureties for *Daniel McKenzie*, who was also made one of the defendants in said suit, but was returned by the sheriff of *Carroll* county *"non est,"* a judgment for $377 58, with interest from the 8th September, 1841, and costs; and also one other judgment against your orator and one *George Crabbs*, who were also securities of the said *Daniel McKenzie*, for $238 70, with interest from the 9th September, 1841, and costs; that on the 28th February, 1842, *Thomas Gurley* agreed with complainant that if he would pay him the sum of $150 00, and convey to him, the said *Thomas Gurley*, all the right, title, claim and interest of complainant, in and to a lot of ground with the buildings and improvements thereon, which had been before conveyed to your complainant and the said *Boyle* and *Crabbs* by the said *McKenzie;* that then he the said *Gurley*, would release your orator from all claim or demand by virtue of or on account of said before mentioned judgments, all which will more fully appear by reference being had to the receipt and agreement of the said *Thomas Gurley* herewith filed; that he has paid to the said *Thomas Gurley* the said sum of $150 00, and has offered to convey to the said *Thomas Gurley*, and is now and has been at all times since the making of the said agreement been willing to convey to the said *Thomas Gurley* all his right, title, claim and interest in and to the said aforementioned lot of ground, with all the buildings and improvements thereon. And your orator further states that he has actually tendered to the said *Thomas Gurley*, a deed of conveyance, executed according to law, for all his right, title, claim and interest in and to said lot of ground and premises, which said deed of conveyance the said *Thomas Gurley* has refused and still refuses to accept; that the said *Thomas Gurley*, notwithstanding his said before mentioned agreement, did order two writs of *fieri facias* to be issued against the property

of your orator on the said aforementioned judgments, which said writs of *fieri facias* were actually issued, placed in the hands of the sheriff of *Carroll* county to be executed, but which were not executed; that the said *Thomas Gurley* has ordered writs of *ven. expo.* to be issued, and the property of your orator to be sold to pay and satisfy said judgments; that the said writs were directed to be issued by the said *Thomas Gurley*, after the execution of the aforementioned receipt and agreement.

*Prayer* for a *subpœna* and injunction to the said *Thomas Gurley*, commanding him to give over all further proceedings at law against complainant, or on said judgments, or either of them, &c., and for general relief, &c.

With the bill were filed short copies of the judgments referred to in it, and the following receipt:

"*February the 28th*, 1842.   Received of *Israel Hiteshue*, one hundred and fifty dollars, it being in part pay of two judgments in my favor, the one against *Daniel McKenzie, John B. Boyle* and *Israel Hiteshue*, the amount $419 70½; the other against *Daniel McKenzie, George Crabbs* and *Israel Hiteshue*, amount $263 75½; and for the balance due to me by the said *Hiteshue*, he doth agree to convey to me all his right, title, interest and claim of a house and lot in *Taneytown*, formerly the property of said *Daniel McKenzie*, at which time I bind myself, my heirs and assigns, to discharge and exonerate the said *Israel Hiteshue*, his heirs or assigns, from all persons claiming any money or monies in virtue of the beforementioned judgments.                                   THOMAS GURLEY."

On this the court (BREWER, A. J.,) ordered an injunction.

The answer of the appellant admitted the rendition of the judgments answered in the bill, and the execution of the receipt by him.   It alleged that the agreement on which the agreement was founded, and the receipt itself, were fraudulent and void, being obtained upon the false representation of *Hiteshue* to him, that the house and lot were clear of incumbrances, and that *Hiteshue* had a good title thereto, which he had not in fact. That the receipt was erroneously read to the defendant, and as

if it contained a stipulation to convey a good title; that the house and lot are not worth the balance of the debt due on the judgments. The payment of $150 was also admitted. The tender of a valid deed was denied. The issuing of the writs of *fi. fa.* and their levy were also admitted. That the writs of *vendi.* were ordered. The answer also alleged that the bill was defective for want of parties, the defendants in the judgments being necessary parties.

The complainant filed the general replication. The defendant upon petition, was afterwards permitted to file a supplemental answer, for the purpose of showing that no deed to the complainant for the lot in question had ever been put upon record until the 8th October, 1842, though executed on the 22d July, 1841, and that in fact it is a mortgage to secure the grantors, *Hiteshue, Boyle* and *Crabbs,* as securities for *McKenzie,* and is void as not recorded in due time; with the supplemental, a certified copy of the deed was filed.

A commission to take proof was then issued, and the proof as far as necessary appears in the opinion of the Appellate Court.

At April term, 1846, the county court (DORSEY, C. J., WILKINSON and BREWER, A. J.,) decreed a perpetual injunction from the defendant. T. GURLEY appealed to this court.

The cause was argued before ARCHER, C. J., CHAMBERS, SPENCE, MAGRUDER and MARTIN, J.

By PALMER for the appellant.

The appellant submits the following points for the consideration of the court:

1st. It is a legal maxim, that a release and discharge of one joint defendant in a judgment, is a release and discharge of all; therefore, a specific execution of the agreement in this case, would also release and discharge *Boyle* and *Crabbs,* which could not have been the intention of the appellant.

2nd. A court of equity will not decree specific performance, except in cases which, by extraordinary fairness, deserve it;

not only must the contract be fair, but it must be performed according to its true intent.

3rd. The bill in this case is addressed to the sound judicial discretion of the court, in the exercise of its extraordinary jurisdiction, and the court will exercise that discretion so as to promote the ends of justice under the peculiar circumstances of the case.

4th. A complainant coming into a court of equity, seeking a specific performance of an agreement, must *be able and offer* to do equity, before he can be entitled to the aid of this court.

5th. In this case the complainant has a complete remedy at law, and not having alleged any facts in his bill to entitle him to the aid of this court, he should be sent to a court of law for relief, if he be entitled to any relief.

6th. The facts and circumstances of the case clearly shew, that the agreement of the 28th February, 1842, was obtained by fraud or mistake. Fraud may be presumed from facts and circumstances, the character of the contract, and the nature and condition of the whole transaction.

By W. P. MAULSBY for the appellee.

1st. The prayer for the appellee's bill of complaint, is *not* for a specific execution of a contract, but for an injunction to restrain proceedings at law against the appellee, (the complainant below) on the judgments mentioned in the bill, on the ground that the contract set out constitutes an equitable bar to further proceedings by the appellant, (the respondent below) to collect the money alleged to be due on said judgments, from the appellee.

2nd. The bill does *not* pray for an injunction against proceedings against the other defendants in the judgments, but is confined to relief to the appellee, the party to the contract.

3rd. Whatever the legal effect of the contract may be, as to releasing the other defendants, is immaterial, since the appellant cannot be relieved of his mistake of the law, even if he had established that he was mistaken, of which there is no proof.

4th. The other defendants, *Boyle* and *Crabbs*, had paid to the appellant their proportion of the amount of the judgments, before the bill was filed, and nothing is involved in this case, except the proportion of the appellee.

5th. The appellant is bound by his contract, unless it were fraudulently obtained by the appellee. The answer alleges fraud—but the testimony does not sustain the allegation;—the transaction is fair and bona fide. Whether either of the parties, and which of them, made a good or a bad bargain, the court will not inquire.

CHAMBERS, J., delivered the opinion of this court.

This is an appeal from a decree for a perpetual injunction issued to restrain a plaintiff at law from proceeding to enforce a judgment upon the ground, that since the judgment he has entered into an agreement to receive from one of the defendants in the judgment, a conveyance of certain real property in discharge of the judgment.

We lay no stress upon the fact that one hundred and fifty dollars in cash was also paid by the defendant, because the payment of part of an admitted debt is neither in law or equity a good consideration for abandoning all claim to the residue. It is to be regarded simply as a discharge *pro tanto* of the judgment, leaving the balance of the judgment debt as the subject of the agreement. To entitle the debtor to exemption from the payment of his debt either at law or in equity, he must prove a release or payment, or an agreement to receive some equivalent in satisfaction. In this case, neither a release nor payment is relied on, and could not be, inasmuch as such a defence would be properly made in the court of law, on the return of the execution, and nowhere else. The debtor relies on the agreement set forth in the bill, by which he alleges it was stipulated that his interest in certain land should be passed to the creditor and received in satisfaction of the debt. This defence is not sufficient at law to arrest proceedings on the judgment. The debtor can there only obtain advantage of the agreement by an action of damages sustained

by a breach of it after the judgment debt has been collected by execution. He has therefore asked relief in a Court of Chancery, where, by the process of a perpetual injunction, he seeks to enforce the execution of the agreement according to its letter. It has been denied in argument that this is to be regarded as a bill to enforce a specific execution of a contract; but we think that all principles which apply to the case of a bill for specific performance, apply with equal force to the case of a bill for perpetual injunction, when that injunction accomplishes all the objects which could be accomplished by a successful prosecution of a formal bill for specific execution. This case most strongly illustrates the propriety of such a principle. The bill which should be filed for specific execution of this contract, would require the party to receive a conveyance and execute an instrument which should discharge and exonerate the complainant from all liability in virtue of said judgment. This discharge presented to the court of law, would prevent any further proceedings against him on the judgment. The bill before us by a more direct mode, procures from the Chancery Court the same, a peremptory mandate, that no further proceeding against him be had on the judgment. It is not possible that a distinction can be made in regard to the principles which regulate the Chancery Court in the one case or the other.

The leading object in every such case is to carry into full effect, the exact objects and intentions of the parties, on the ground that where an honest and fair contract has been entered into by parties competent to engage without imposition or malpractice on either side, no advantage should be taken by either of any subsequent change of circumstances or of opinion which might alter, or be supposed to alter, the benefits resulting to the parties respectively. A court of equity, professing as it does to lend its aid exclusively to cases in which a claim can be conscientiously enforced, will never coerce the specific performance of a contract for a party who has not acted fairly, openly and without suppression of any important fact, or the expression of any falsehood. Whether with a fraudulent design or innocently, yet if a false impression has been conveyed and made

the basis of the contract, this extraordinary jurisdiction of the court will not be exercised by coercing a specific performance.

Without going further into an investigation of the facts of this case, we are of opinion that the agreement in this case is not a fair and equitable one. The debtor proposes to convey his interest in a house and lot in discharge of a debt of some five or six hundred dollars. If he has no interest he asks the court to compel the creditor to exonerate him for no consideration whatever. Surely that cannot be consistent with conscience or equity, nor could it be so intended by either party. If it was intended by the debtor to obtain a release by nominally giving an equivalent, knowing that in fact it was merely nominal, it would be a fraud. If he did intend it should be more than nominal, it is necessary to show it to be so. Then, it is said, he had an interest under the mortgage from *McKenzie* to himself, *Boyle* and *Krebs*. This mortgage was executed to indemnify the grantees for certain liabilities as sureties, and it is not alleged that any payment or advance had been made by either of them, until the payment of the $150 mentioned in this agreement; of the nature of his title or the extent of his interest, not one word was said to the creditor, the appellant, nor is there the least proof that he ever had the slightest information, nor does it appear that he had any cause to doubt when the offer was made to convey to him the right, title and interest of the appellee, it was anything else but the legal title in the property. But without stopping to consider what would be the effect of such a state of things, it is enough here to say that the mortgage deed had not been recorded within the time required by law.

The result was that the appellee could not convey any interest whatever. He could only convey the privilege of prosecuting a suit in Chancery to have the mortgage deed recorded, and obtain whatever interest had thereby been conveyed to the appellee subject to all intermediate incumbrances.

The authorities cited fully establish the proposition that a vendee will not be required to take such a title. The clear intention of a contract of sale, as we must regard this, is to get

a title, not a law suit. The late case of *Buchanan* and *Lorman* in this court, recognizes this doctrine, and we think properly. No other intention can be ascribed to the parties unless the terms used indicate their knowledge that such is not the character of the interest which is the subject of the contract. A ground of error in this decree not alluded to at the bar, is that it made no provision for the transfer to the appellant, of whatever the appellee might convey.

True it appears by the proceedings, that during this controversy, a deed was tendered, but it was never accepted or delivered. It is quite clear that when the decree required a discharge to the debtor, it ought at the same time to have provided for his executing and delivering a conveyance of his interest in the house and lot.

It is therefore the opinion of this court, that there is error in the decree of *Carroll* county court, and that the same should be reversed with costs.

But as the appellee is entitled to the credit of $150, admitted to be paid, the injunction should be ordered to stand to that extent, and as to every other purpose, be dissolved. A decree in conformity to these views will be signed.

DECREE REVERSED WITH COSTS.