## · JOHN T. GORSUCH

### *vs.*

## HENRY G. M. KOLLOCK, JR., ET AL.

*Sale of Land—Part Performance of Contract—Bill for Spe-
cific Performance—Proof as to Part of Tract— Re-
mand by Appellate Court.*

The act relied upon as part performance must of itself fur-
nish evidence of the identity of the contract, and it is not
enough that it is evidence of some agreement, but it must
relate to and be unequivocal evidence of the particular agree-
ment charged in the bill, and be done solely with a view to the
performance of the particular agreement. p. 467

When possession is assumed as an act of part performance,
it must appear that the land has been delivered and the pos-
session taken in pursuance of the contract, and so retained and
continued, mere occupancy, not shown to be in pursuance of
the contract, not constituting part performance. p. 467

Payment by the purchaser of a part or the whole of the pur-
chase money is not an act of part performance taking the parol
contract out of the statute, though performance of the consid-
eration and change of possession under the contract are, when
combined, sufficient. p. 467

If the courses and distances, as given in a bill for specific
performance, accurately describe the property purchased, that
such courses and distances were not referred to at the time of
the purchase is no defense. p. 468

On a bill by the vendee for specific performance of an alleged
parol sale, *held* that, as the evidence showed a sale, not of the
entire tract as to which relief was sought, but of part thereof,
and as there was evidence of part performance, the case should
be remanded to the lower court without affirming or reversing
the decree of that court dismissing the bill, in order that
plaintiff might, if he so desired, amend the bill by setting up

the contract for the smaller amount of land, and take testimony to sustain such sale; otherwise the bill to be dismissed within a reasonable time after remand. pp. 469-471

*Decided November 18th, 1921.*

Appeal from the Circuit Court for Baltimore County (DUNCAN, J.).

Bill by John T. Gorsuch against Henry G. M. Kollock, Jr., and Estelle Elizabeth Kollock, his wife. From a decree for defendants, plaintiff appeals. Cause remanded without affirmance or reversal.

The cause was argued before BOYD, C. J., THOMAS, PATTISON, URNER, and STOCKBRIDGE, JJ.

*W. Calvin Chesnut* and *Rowland K. Adams,* for the appellant.

*Daniel S. Sullivan,* with whom was *Henry P. Pielert* on the brief, for the appellee.

BOYD, C. J., delivered the opinion of the Court.

This is an appeal from a decree dismissing a bill of complaint, filed by the appellant against the appellees, seeking to have specifically enforced an alleged agreement between them for the sale of land sold by the appellees to the appellant on or about the first of July, 1919. The tract is described in the bill by courses and distances and the bill alleges that the purchase money (four hundred dollars) was paid on the 26th of July, 1919, and since then that the plaintiff has occupied the entire tract described, with the exception of a few square feet upon which there is a chicken coop which belonged to the defendants and which it was understood was to be removed by them; that he had full and exclusive use of said tract and had performed in full and in every respect his part of the

agreement. It is further alleged that the plaintiff had demanded a conveyance of the property, but that the defendant, Kollock, had, upon one pretext and another, delayed and refused to execute a conveyance, so that it became necessary for a deed to be tendered, which was done, and the defendants refused to sign it, or any deed.

The defendants by their answer denied that they had agreed to sell said land to the plaintiff, and alleged that they refused to execute the deed because they had never agreed to sell to the plaintiff the land demanded of them, and that they had offered to return to him the four hundred dollars, and are ready and willing, and always have been ready and willing, to do so. It is further alleged in the answer that there is not now and never has been between them, or either of them, and the plaintiff, any contract or agreement, valid either at law or in equity, for the sale of the land described in the bill, or any other land belonging to the defendants or either of them.

The real controversy between the parties only involved a strip of ground along a lot owned by Kollock, 10.64 feet wide, on the northerly side, and 49 feet on the southerly side thereof. The plaintiff is a contractor and was engaged in the construction of a concrete bridge over Stemmers Run, near the station of the Phila., B. & W. Railroad Company of that name. Kollock was station agent of the company and owned a small tract of land a short distance south of the station, having originally about 362 feet frontage on a public road, south of the railroad tracks, and having a width in the rear of 528 feet. He had sold one-half of that tract to George J. Jung and retained the other half, having a frontage of 187.28 feet on the public road and 264 feet in the rear. Mr. Gorsuch had dissolved partnership with his former partner, and desired some place near Baltimore to put his plant on, and in May, 1919, Mr. Kollock agreed to let him put it on his lot. He moved it on the eastern part of the lot, the cost of moving being, according to his claim, about fifteen or sixteen

hundred dollars. The parties differ as to that arrangement, Gorsuch claiming that Kollock agreed to lease it to him for at least eight years, at a price to be fixed by Kollock and his wife, and Kollock claiming that he let him place his plant there free of charge. No formal lease or written agreement was made about it, but Gorsuch built a shed twenty by forty feet on the northwest corner of the eastern half of the Kollock lot, at a cost, according to his testimony, of six hundred dollars, in which he placed some of his equipment. Nothing more was done about the lease, but Gorsuch remained in possession of the lot, his material covering about two-thirds of it, and about July 1st, 1919, he spoke to Kollock in reference to buying the land. They had some negotiations concerning it, Gorsuch claiming that it was for the half of the lot remaining after the sale to Jung, but the defendants deny that anything was said about the half, and claim that they sold to the plaintiff the eastern part of the lot fronting eighty-three feet on the public road and running back with an even width of eighty-three feet in the rear. Although they differ thus as to what was purchased, they made some kind of agreement, although verbal, and Gorsuch paid on July 26th, 1919, the purchase price agreed upon (four hundred dollars)—giving to Mrs. Kollock, in the presence of her husband, four one-hundred dollar bills, which she in turn handed to her husband. The property which Gorsuch claims he purchased has a frontage of 93.64 feet on the public road and a width of 132 feet in the rear, being thus 10.64 feet on the public road and 49 feet in the rear, more than the 83 feet which the Kollocks claim embrace the lot sold.

The testimony of Mr. and Mrs. Gorsuch and Mr. and Mrs. Kollock is in irreconcilable conflict as to what was agreed to be conveyed. The only additional evidence on the subject is that of Edward R. Herold, who was, in July, 1919, the chauffeur of Mr. Gorsuch, although before testifying he had left his employ. Without referring to it in detail it is sufficient to say that his evidence alone would certainly not prove

plaintiff's contention, and when it is taken in connection with that of the plaintiff and his wife, we cannot reach the conclusion that the plaintiff's case is made out with sufficient certainty to overcome the positive testimony of the defendant and his wife. No deed, agreement or memorandum was made before January, 1920, when the relations between these parties, which had been theretofore pleasant and most friendly, were broken off; and when Gorsuch called on Kollock about running out the land he claimed to have bought, Kollock abused him and called him a thief and a rogue. Gorsuch occupied a good part of the lot, having entered under the previous permission given him, which Gorsuch testified was to be closed by a lease for eight years, but which the defendants emphatically deny.

Something might be said in support of the position of each side, but it is impossible for the Court to feel reasonably certain that the plaintiff is entitled to the relief prayed for in the bill, after a careful and thorough examination of the evidence. Although it is admitted that the purchase money was paid, that the plaintiff is, and has been since May, 1919, in possession of at least part of the property, and it is shown that some improvements had been made on it by him both before and after the supposed purchase had been made, it is positively denied by the defendants that the purchase money was paid for the property described in the bill, they claiming that it was for the eighty-three feet and that the possession was given before any purchase was ever thought of, and that the improvements made after July 26th, 1919, were not on the disputed area.

It must be borne in mind that the contract sought to be enforced is a parol one, and one that would be governed by the Statute of Frauds, unless it was clearly shown not to be within the statute. ."The right to specific performance in such a case is not founded upon the theory that part performance is a compliance with the statute; but upon the ground that such part performance takes the case entirely out of the

statute." *Miller's Eq. Proc.,* 708, sec. 704. As said by that
author in section 706, on page 809: "The act relied upon as
part performance must of itself furnish evidence of the ident-
ity of the contract. It is not enough that it is evidence of
some agreement, but it must relate to and be unequivocal evi-
dence of the particular agreement charged in the bill, and be
done solely with a view to the performance of the particular
agreement." Again, in section 707, it is said: "When pos-
session is assumed as an act of part performance, it must
appear that the land has been delivered and the possession
taken in pursuance of the contract and so retained and con-
tinued. The possession must be referable to the contract, and
not to a distinct title. Mere occupancy, not shown to be in
pursuance of the contract, does not constitute part perform-
ance." Then, in section 709, it is said: "The payment by
the purchaser, to the vendor, of a part or even the whole of
the purchase money, is not an act of part performance which
will of itself take the parol contract out of the statute. But
performance of the consideration, and change of possession
under the contract, when combined, have always been re-
garded as relieving a parol agreement in respect to land from
the operation of the statute." That learned and careful
author has supported his statements of the law quoted above
by numerous decisions of this Court, and it is not necessary
for us to quote from many of them. There have been a great
many decisions since that work has been published, but they
have not changed the rules as announced in former decisions,
or in that text.

It would seem that there can be but little aid to the plain-
tiff on the ground of part performance. The courses and dis-
tances of the land given in the bill were ascertained by the
survey made in January, 1920, when the lot of Kollock was
undertaken by the surveyor to be divided into two equal
halves. There was nothing, at the time of the purchase, on
the ground to indicate or define such lines, and the steel posts
referred to in the description were placed in the ground at

the time of the survey in January, and they did not take the place of any marks or calls previously on the lot. If, as plaintiff claims, the purchase was of one-half of the lot, and the courses and distances in the bill describe such half with accuracy, we would have no difficulty simply because there were no such courses and distances given or referred to at the time of the alleged agreement, when the purchase was made, for if there was a sale of the half of the lot it could not be said that it was of a different property from what is described in the bill. If a sale is made of a tract called black acre, and a bill for specific performance describes that tract by its courses and distances, instead of by its name, it could not properly be said that the bill was for a different property from that sold. But the controversy in this case is as to what was agreed to be sold, and that is, in our opinion, not shown with sufficient certainty to enable us to decree specific performance in favor of the plaintiff.

Of course, *"The* contract must first be established, failing in this, these super-added considerations" of part performance "can have no avail." *Smith* v. *Crandall,* 20 Md. 482, 501. CHIEF JUDGE LEGRAND said, as early as *Ches. & Ohio Canal Co.* v. *Young,* 3 Md. 480, 490, that "where the party claims to take the case out of the Statute of Frauds on the ground of part performance of the contract, he must make out by clear and satisfactory proof the existence of the contract as laid in the bill; the act of part performance must be of the identical contract set up. It is not enough that the act is evidence of some agreement, but it must be unequivocal and satisfactory evidence of the *particular* agreement charged in the bill." Again in *Mundorff* v. *Kilbourn,* 4 Md. 459 (quoting for convenience from the syllabus), it was said: "In cases for the specific performance of contracts, the complainant must establish the very contract set up in his bill, and all acts of part performance relied upon must be clear and definite and refer exclusively to the alleged agreement." In several of our cases decided at the last term, these rules were in

effect repeated. In *Polianski* v. *Polianski,* 138 Md. 602, JUDGE BRISCOE said: "The rule of law is well established that 'in all cases for specific performance, the contract must be accurately stated in the bill, and the proof must in every essential particular, correspond with the terms of the contract thus set up. The proof must be clear and explicit, leaving no room for reasonable doubt,' " citing *Semmes* v. *Worthington,* 38 Md. 298, and other cases. He also quoted from *Mundorf* v. *Kilbourn, supra,* where the Court referred to what the LORD CHANCELLOR said in *Walpole* v. *Oxford,* 3 Ves. 402, that "all agreements to be executed in equity must be certain and defined, equal and fair, and approved as the law requires; and that it was enough to doubt upon any one of these points to refuse relief." In *Stern* v. *Shapiro,* 138 Md. 625, JUDGE OFFUTT, after saying, "We are affected and indeed controlled by the rule that the complainant in such a case as this, to obtain the relief prayed, must establish by clear, certain and convincing proof, free from ambiguity or reasonable doubt, the allegations of the bill," quoted with approval section 676 of *Miller's Equity Procedure,* that "in respect to the character of proof required to establish a contract sought to be enforced, it is the duty of the plaintiff to make out the case set up in the bill with such distinctness, certainty and legality in all its parts that the court may have no difficulty in deciding exactly what the contract was. The proof must be clear and explicit, leaving no room for reasonable doubt, and must in every essential particular correspond with the terms of the contract set up in the bill."

Applying these rules to this case, we are forced to the conclusion that the plaintiff has not sustained the allegations of his bill in reference to the contract, and specific performance cannot, therefore, be granted for the property alleged to have been purchased by him. It is impossible for the Court to be reasonably certain as to what the parol agreement really was, in view of the conflicting testimony, and the Court would not be justified in passing a decree for the specific per-

formance of the contract alleged in the bill. But we are satisfied that the circumstances, either admitted or proven beyond question, justify some relief to the plaintiff for what we have spoken of as the eighty-three feet, part of the lot in question. The only question we had to determine in reference to that has been—what relief can properly be granted?

Both of the defendants have testified that they did sell to the plaintiff eighty-three feet of the eastern part of the lot running back with the same width to the rear; they admit that they received the purchase money for it, and there is evidence of the plaintiff taking possession of that part of the lot and doing acts of part performance on it, such as may justify the decree for specific performance of that contract. The claim intimated by the defendants, but not established, that the sale of the eighty-three feet was subject to the condition that it was to be used only for the dwelling to be built by plaintiff, has no merit in it, and is not borne out by the record. It may be true that plaintiff said he was going to build a house on the lot which the defendant sold him, and, indeed, he still says so, but we find nothing from which it could be said that the lot was purchased subject to the condition that it was only to be used for such purpose. Mr. Kollock testified that he had no objection to Mr. Gorsuch moving his plant there, and that he in fact helped him to put it there. That suggestion made by the defendants caused us to have as much doubt about their testimony as any other thing in the record, as it seemed to be suggested for the purpose of defeating the plaintiff, although the defendants had in their pockets the whole of the purchase money, and, by their actions, had caused him to spend a good deal of money on that lot. It seems to us that, under the peculiar circumstances of this case, the Court will be justified in remanding the cause to the lower court without affirming or reversing the decree, where leave can be obtained to amend the bill and set up the contract for the eighty-three feet, if the plaintiff so desires, and take testimony to sustain that sale. Of course, under

our view of the case, if that is done the four hundred dollars must be treated as the purchase money for the eighty-three feet, and the plaintiff would not be entitled to any reduction from it by reason of his not getting the additional strip which he claims in the present bill. If the plaintiff does not see proper to set up the contract for the eighty-three feet within a reasonable time after the cause is remanded to the lower court, 'that court will be authorized to take proceedings to have this bill dismissed, but it seems equitable and just to us to adopt this proceeding.

> *Cause remanded without affirming or reversing the decree appealed from, under section 38 of article 5 of the Code, the costs to be subject to the final decree that may be passed.*