## J. FRANK HEARN *vs.* FRED. E. RUARK.

*Injunction—Against Breach of Contract—Sale of Chattels—
Specific Performance—Remedy at Law—Statute of
Frauds—Part Payment—Evidence.*

The principles which apply to a bill for specific performance are applicable to a bill for an injunction, by which it is sought to accomplish the objects which could be accomplished by a bill for specific performance of the contract.          p. 357

In order to justify a decree for specific performance, the contract must be definite and certain in all its terms, and must be free from all shade or color of ambiguity.          p. 357

In a suit for specific performance, the contract must be accurately stated in the bill, and the proof must in every essential particular correspond with the terms of the contract thus set up, and must be clear and explicit, leaving no room for reasonable doubt.                              pp. 357, 358

In a suit to restrain a breach of an alleged contract by defendant to grow tomatoes for plaintiff upon not less than four acres of land and to deliver all tomatoes so grown at a named price per basket, *held* that the evidence was insufficient to show such a contract.                              p. 358

That defendant agreed to deliver to plaintiff all the tomatoes that he might grow on his land would not prevent him from turning the land over to his son, without any obligations as to the tomatoes grown by his son, there being no definite agreement that defendant would grow tomatoes.          p. 359

That in a suit for the specific performance of a contract for the sale of chattels, plaintiff testifies that defendant's credit is perfectly good, is sufficient under Code 1924, art. 16, sec. 246, to oust the jurisdiction of equity, provided that there is an adequate remedy at law.                                    p. 361

In a suit on account of an oral contract by defendant to sell his crop of tomatoes to plaintiff, seed and fertilizer, ordered by defendant from plaintiff, cannot be regarded as given in earnest to bind the contract for the tomatoes, or in part payment therefor, within Code 1912, art. 83, sec. 25, although plaintiff charged the seed and fertilizer to defendant "with reference to the crop of tomatoes," "to be paid for out of the tomatoes," in the absence of evidence that they were so charged by the order or with the knowledge and acquiescence of defendant.

pp. 361, 362

*Decided May 6th, 1925.*

Appeal from the Circuit Court for Dorchester County, In Equity (PATTISON, C. J.).

Bill by J. Frank Hearn against Fred E. Ruark. From a decree for defendant, plaintiff appeals. Affirmed.

The cause was submitted on briefs to BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*V. Calvin Trice,* for the appellant.

*Harrington, Harrington & Wallace* and *Fletcher & Jones,* for the appellee.

ADKINS, J., delivered the opinion of the Court.

This suit grows out of an alleged tomato contract between appellant, plaintiff below, who is a canner, and appellee, defendant below, who is alleged to have grown the tomatoes which are the subject of the suit.

On learning that the tomatoes were not to be delivered to him, plaintiff filed a bill for injunction to restrain defendant "his agents, servants, employees, children and members

of his family, they and each of them," "from selling, deliv-
ering or in anyway disposing of the said tomatoes except to
the complainant."

A preliminary injunction was granted, which was subse-
quently dissolved on motion of defendant, after the taking
of testimony and a full hearing. From the decree dissolv-
ing the injunction and dismissing the bill of complaint, this
appeal was taken.

It is difficult to determine from the testimony just what
the terms of the contract between plaintiff and defendant
were.

Referring to two visits by him to defendant, plaintiff test-
ified: "I visited him at his place of business and told him
that we were contracting for twenty-five cents a basket, we
would haul the tomatoes and give twenty-five cents and fur-
nish the use of baskets. He did not tell me at that time, did
not know, did not have a team or something, he might grow
some or he might not, but he would see me later and decide
what he could do. I went down to see him some time after
that and he told me he had decided. I called to see him
again down at his store and he told me at that time that he
thought he could arrange to grow some tomatoes, he might
grow about four acres, I could put it down four acres, he
might not get out that many, or might more, but whatever
he grew, he would grow for me and I put him down four
acres."

This was substantially the testimony of John Jones, plain-
tiff's manager.

Defendant's version of these conversations is as follows:
"Mr. Hearn came down to my store in March and said he
was looking around about the tomato business. I said, 'Mr.
Hearn, I don't know what we are going to do, probably won't
do anything this year, the boys talk like they don't want to
farm any and I haven't any team.' So finally Mr. Hearn
left and he came back again some time in April and he said,
'I have come around to see you again, about the tomato busi-
ness to see what you know,' something like that. I said, 'I
don't know much more. I have not got no team. I have

been trying to buy a horse and have been unable to find one.' * * * He said, 'About how many acres would you plant if you did plant?' I said, 'About four acres, I suppose.' So he said, 'I will put you down for four acres.' I said, 'You better not Mr. Hearn, I may not grow any.' Mr. Hearn said, 'It is likely you will.' I said, 'It is up to you.'"

Defendant denies that he said plaintiff should have all that defendant grew, or that anything was said about price or about when the tomatoes should be delivered.

Defendant or his son set out seven and three-quarters acres in tomatoes. It appears from the testimony of defendant and his son that before the plants were set out defendant sold his interest in the tomatoes to the son.

"Whenever the court grants an injunction restraining the breach of any express or implied terms of a contract, it thereby, *pro tanto,* specifically enforces the performance of the contract." *Miller's Eq. Proc.,* sec. 655; *Fry, Spec. Perf.,* sec. 1147.

In *Gurley v. Hileshue,* 5 Gill, 217, it is said that all principles which apply to the case of a bill for specific performance apply with equal force to the case of a bill for perpetual injunction, when that injunction accomplishes all the objects which could be accomplished by the successful prosecution of a bill for specific execution. And it was held in *Burton v. Marshall,* 4 Gill, 487, that upon a contract affirmative in all its provisions, the execution of which could not be enforced in equity, a court of equity cannot be asked to engraft a negative stipulation, and restrain its breach by injunction. See also *Hahn v. Concordia Society,* 42 Md. 460; *Phoenix Pad Mfg. Co. v. Roth,* 127 Md. 540.

One of the familiar principles applicable to suits for specific performance is that the contract must be definite and certain in all its terms, and must be free not only from all ambiguity, but likewise free from all shade or color of ambiguity. *Miller's Eq. Proc.,* sec. 683, and cases in notes 1 and 3; *Phoenix Pad Mfg. Co. v. Roth, supra.*

The rule of law is well established that, in all cases for

specific performance, the contract must be accurately stated in the bill, and the proof must in every essential particular correspond with the terms of the contract thus set up. The proof must be clear and explicit, leaving no room for reasonable doubt. To doubt is to refuse relief. *Semmes v. Worthington,* 38 Md. 298; *Mundorff v. Kilbourn,* 4 Md. 459; *Polianski v. Polianski,* 138 Md. 602; *Stern v. Shapiro,* 138 Md. 625; *Gorsuch v. Kollock,* 139 Md. 462; *Miller's Eq. Proc.,* sec. 676.

It cannot be said in this case that the requirements above set out have been met. Neither has the contract set up in the bill been proved in all essential particulars, nor has any definite contract been proved with such certainty as to remove all doubt from the mind of the court as to what the real agreement between the parties was.

The bill alleges that defendant agreed to grow tomatoes for plaintiff on the land of defendant where he resides,

"upon not less than four acres of land or all of the tomatoes the defendant should grow, and to deliver the tomatoes to be grown upon the said land, during the tomato season of 1924, to the canning house of the complainant, the complainant to pay for the tomatoes so sold, to be grown and delivered, as aforesaid, the sum of twenty-five cents per basket, to be paid at any time after the tomatoes were delivered when asked for by the defendant, or to be paid for in December, 1924, * * * the complainant to furnish the defendant phosphate for the growing of the tomatoes and tomato seed for plants, and after the said contract was made, the complainant furnished the defendant on account of the said contract, two tons of phosphate at thirty dollars per ton, and one pound of tomato seed at four dollars per pound, the said phosphate and seed being received by the defendant from the complainant on account of the said contract and used by the defendant to plant and grow the tomatoes."

There is no evidence that defendant agreed to grow tomatoes for plaintiff on not less than four acres of land, or that

the tomatoes were to be delivered at the canning house; or
that they were to be paid for at the times alleged; or that
plaintiff was to furnish the seed or phosphate under the con-
tract sought to be enforced; or that seed and fertilizer was
furnished and received on account of said contract; or that
all the fertilizer was used on the tomato land. Indeed, there
is no evidence that defendant agreed to grow tomatoes on any
certain number of acres. In view of the whole testimony it
would have been difficult for the court to be free from doubt
as to whether defendant agreed definitely to grow any to-
matoes. And this is important in connection with the un-
contradicted testimony of defendant and his son, that after
the date of the alleged contract defendant, finding himself in
difficulty about securing labor, some time in the month of
May, before the tomato plants were set out, turned over the
cultivation of the farm to his son Layman, under an agree-
ment that Layman should have the tomatoes and defendant
the rest of the crops. If there was no definite agreement
made that defendant would grow tomatoes, then even if it
be taken as proved that he agreed that plaintiff should have
all he might grow, and that Layman knew of such agreement,
there was nothing to prevent defendant from subsequently
turning over the farm to Layman without any obligation to
plaintiff as to the tomatoes that might be grown by Layman.
The fact that such a transaction may be open to suspicion is
not enough to enable the court, on the proof in this case, to
entirely disregard the uncontradicted testimony.

Our conclusion is that the proof of the alleged contract
was without such degree of definiteness and certainty as would
have entitled plaintiff a decree for specific performance,
and, therefore, he was not entitled to an injunction. But if
that were not so there were two other reasons for dissolving
the injunction.

1. Formerly the general rule was that courts of equity
would not decree the specific performance of a contract for
the sale of goods and chattels, "for the reason that an ac-
tion at law for the breach of the contract affords as complete

a remedy for the purchaser as the delivery of the goods.
Damages at law, calculated on the market price of the goods
and chattels bargained for, furnish, in ordinary cases, an
adequate redress to the purchaser for the breach of the bar-
gain by the vendor. The rule does not depend upon any dis-
tinction between realty and personalty, but because courts of
law in such cases are generally competent to afford a com-
plete remedy by damages." *Miller's Eq. Proc.*, sec. 664,
and cases cited in notes.

There were many exceptions to the general rule, founded
principally upon the inadequacy of the remedy at law in the
particular case, or the special and peculiar nature and value
of the subject matter of the contract. *Id. sec.* 665 and notes.
The case of *Equitable Gas. Co. v. Balto. Coal Tar Co.*, 63
Md. 285, illustrates the exception based on both the above
grounds.

*Neal v. Parker,* 98 Md. 254, is a case coming under the
general rule. In the latter case plaintiff, engaged in manu-
facturng "shucks" in Caroline County, sought to have spe-
cifically enforced a contract for the sale of lumber to be sawed
at a mill in Caroline County. There was some evidence
tending to show that plaintiff made efforts to purchase other
lumber, when he ascertained that defendant would refuse to
comply with his contract, but it was proved that he could in
the open markets of Baltimore City have procured the same
quality of lumber at a very much higher price.

Chief Judge McSherry, speaking for this Court, said:
"This being so, the jurisdiction of equity would be ousted,
unless we have some statutory provision expanding that juris-
diction and extending it to a class of cases to which this be-
longs." He then discusses the effect of the Act of 1888, ch.
263, now section 246 of article 16 of Code 1924, which pro-
vides as follows: "No court shall refuse to specifically en-
force a contract on the mere ground that the party seeking
its enforcement has an adequate remedy in damages, unless
the party resisting its specific enforcement shall show to the
court's satisfaction that he has property from which such
damages may be made, or shall give bond, with approved

security, in a penalty to be fixed by the court, to perform the
contract or pay all such cost and damages as may, in any
court of competent jurisdiction, be adjudged against him for
breach or non-performance of such contract." And he con-
cludes: "The defendant who may be proceeded against has
his election to give bond and oust the jurisdiction of the
court of equity and drive the plaintiff to a court of law where
damages may be assessed by a jury, or, upon failure to give
bond, to subject himself to the jurisdiction of a court of
equity by whose decree he may be compelled to specifically
perform his undertaking."

The defendant in that case failed to file a bond or to offer·
any testimony of his solvency, and for that reason only this
Court held that the lower court properly decreed specific
performance. In the case at bar there was no evidence that
plaintiff could not procure tomatoes in Dorchester County in
the open market—indeed, it was proved that he could have
done so if he had tried. He testified that he had made no
inquiry. So that here, as in *Neal v. Parker, supra,* the
jurisdiction of equity is ousted unless it is expanded and
extended by the statute referred to, as it was in that case.
But here plaintiff himself testified that defendant's credit
was perfectly good. And it was a concession in the case
that he was solvent; while there it was the lack of such
testimony that controlled the decision.

In *Baltimore Process Co. v. My-Coca Co.,* 144 Md. 439,
*Neal v. Parker, supra,* is cited with approval; and attention
is called to the unintentional omission in the opinion in the
earlier case of the alternative provision in the statute for
proof of property in lieu of filing bond. It is important to
remember that what was said in the two cases last cited had
reference only to cases where there was adequate remedy at
law.

2. The alleged contract was entirely oral. It was for
the sale of goods and chattels of the value of more than fifty
dollars and was therefore not enforceable unless the buyer
accepted part of the goods and actually received the same,

,or gave something in .earnest to bind ,the ·contract or in part payment. :29 *Charles* II, ch. 3, sec. 17·; .Code 1912, art. 83, ;sec. 25. No goods were received by the buyer, until after the preliminary· injunction was granted.

It :was proved that some time after ·the alleged contract was concluded defendant ordered seed and fertilizer from plaintiff, and plaintiff testified that he ·charged these to de-·fendant "with reference to the crop of tomatoes" "to be paid for out of the tomatoes," but there is no evidence that it was so charged by the order or with the knowledge and acquies-.cence of defendant. The furnishing of seed and fertilizer .by plaintiff was no part of the contract sought to be enforced. The testimony of both plaintiff and defendant establishes :this.

So far as the record shows, plaintiff could have collected from defendant the price of the seed and fertilizer without .regard to the tomato crop. Defendant could have purchased :them from anyone else, and under the contract plaintiff was under no obligation to furnish them.

There being nothing in the record to show that defendant :treated the seed and fertilizer as payments on account of tomatoes, or knew that plaintiff so treated them, it cannot :be said that they were given in earnest to bind the contract or in part payment. It was on this ground that the learned .chancellor rested his decision. Appellant relies upon the .case of *Wenger v. Grummell*, 136 Md. 80. This Court de-.cided in that case that there was no proof that seed and plants furnished by plaintiff were agreed to be given in earn-.est to bind the bargain, or that they had any relation what-.ever to the contract price; that while the part payment need not be in money, it must be something of value which by mutual agreement is given by the buyer and accepted by the ·seller on account of or in part satisfaction of the purchase ·price, and that there was no such agreement in that case.

That, on the facts of the case at bar, is decisive against :appellant. It is true, the court added that there was no -valuation placed on the seed and plants given the defendant

and therefore no credit on the purchase price was contem-
plated; but that was only additional evidence to support the
court's conclusion.

We find no error in the decree appealed from.

*Decree affirmed, with costs to appellee.*